**JANAF SHOPPING CENTER, INCORPORATED, Appellant,**

v.

**CHASE MANHATTAN BANK and William P. Dickson, Jr., Trustee, Appellees.**

**No. 8187.**

United States Court of Appeals Fourth Circuit.

Argued Aug. 10, 1960.

Decided Aug. 10, 1960.

Opinion Filed Aug. 20, 1960.

---

Joseph V. Gartlan, Jr., and Leonard S. Melrod, Washington, D. C. (Robert H. Winn, Friedlander & Melrod, and David G. Bress, Washington, D. C., on the brief), for appellant.

Robert R. MacMillan, Norfolk, Va., and George E. Lees, New York City (Breeden, Howard & MacMillan, Norfolk, Va., and Dewey, Ballentine, Bushby, Palmer & Wood, New York City, on the brief), for appellee Chase Manhattan Bank.

Thomas H. Willcox, Jr., Norfolk, Va., for appellee William P. Dickson, Jr., trustee.

Joseph G. Dooley, Washington, D. C., for Victor J. Orsinger, applicant for intervention.

Irving R. M. Panzer, Washington, D. C., for Shopping Centers Const. Inc., applicant for intervention.

Before SOBELOFF, Chief Judge, HAYNSWORTH, Circuit Judge, and CHESNUT, District Judge.

SOBELOFF, Chief Judge.

A petition of Janaf Shopping Center, Inc., for reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., was dismissed by the District Court for the Eastern District of Virginia, at Norfolk. The dismissal was upon motion of Chase Manhattan Bank, a creditor of Janaf holding a deed of trust on the latter's property. The court's action, taken on July 29, 1960, was grounded upon its conclusion that the petition was not filed in good faith within the meaning of section 146(3) of the Act, 11 U.S.C.A. § 546(3).

When the debtor sought a stay order from Judge Haynsworth of this court, no stay was granted but arrangements were made, with the consent of counsel, for an early hearing of the appeal. This hearing was held on August 10 and our decision to affirm was announced later that day. We will now set forth briefly our reasons.

Janaf, owner of a tract of land located in Norfolk, Virginia, contracted with Shopping Centers Construction, Inc., to build a large shopping center there. Chase agreed in May, 1959, to make a construction loan of $4,000,000. To protect the contractor, the bank agreed with Janaf to pay installments of the mortgage money direct to the contractor. Massachusetts Mutual Life Insurance Company committed itself, subject to certain conditions, to take over the bank's loan upon completion of the work. Construction began and leases in advance were made with tenants. Some have moved into the center; others have been standing by ready to move in on completion of their stores.

Disputes arose in the course of the work between Janaf and its contractor, with which we are not concerned, except to note that as a result building was suspended early this year. It may be stated generally that the owner, Janaf, claims that the contractor breached its contract by inferior performance, while the contractor's version is that Janaf promised tenants work and facilities in excess of what was called for by the construction contract and that Janaf refused to issue work orders and assume the obligation to pay for such extras. A number of tenants occupying space in the shopping center have declined to pay the rent because facilities promised them are unfinished. Access to their stores is difficult because the entrances and roadways of the center have not been paved. Desirable prospective tenants, losing interest in the shopping center, have abandoned their negotiations and it was stated in open court that 22 tenants have been lost. There has been a spate of litigation in the state courts of Virginia between Janaf and the contractor, and between Janaf and Chase Manhattan Bank of New York, the principal amount of whose advances under the deed of trust is $3,475,000.

A second deed of trust to secure a note for $562,000 is held by the contractor itself, and it joins the Chase Manhattan Bank in opposing the debtor's petition. The holder of this second lien expresses a belief that its equity can be preserved only by stopping at once the continuing depreciation in the property's value. Janaf disputes the note and says it has a large claim against the contractor, while the contractor is asserting a claim against Janaf in addition to the lien claim.

Conferences were held at the Chase Manhattan Bank between attorneys for the bank, the debtor and the contractor, but they have been unable to resolve the impasse or to work out any plan to bring the project to completion. It is estimated that $750,000 would be required for this purpose, but the debtor is unable to supply fresh funds and appears not to have any prospect of raising them. Called upon by the bank to propose some plan to consummate the job, the debtor's counsel declared on June 25 that they had no money and no plan. The debtor's parent company is itself in some difficulty and is certainly in no position to help. The bank is unwilling to advance more money because under the terms of its deed of trust the debtor is now in default for non-payment of interest and taxes, and for failure to complete construction by July 1, 1960, as agreed. Furthermore, the contractor would not release the bank from the agreement to pay to it the remaining loan installments and would not consent to the bank paying another builder to finish the work. In light of this, the bank naturally declined to pay others and thereby possibly involve itself to pay double.

William P. Dickson, Jr., the trustee named in the deed of trust securing the bank's advances, started to advertise the property for sale. At the instance of the debtor, an ex parte injunction was issued by the state court against the bank and the trustee. After a hearing the injunction was dissolved and the court also entered an order enjoining the debtor and its corporate parent from interfering with the trustee's sale which was scheduled for July 26, 1960. However, immediately after the signing of these orders the debtor instituted a Chapter X proceeding in the District of Co-

lumbia. The bank moved for dismissal on the ground that the District of Columbia Court had no jurisdiction, since Janaf did not have its principal office there and the property of the debtor was in Virginia. The debtor then prevailed upon the Judge to transfer the proceedings to the United States District Court for the Eastern District of Virginia.

At the hearing in the District Court in Norfolk it was shown that the value of the project in its present condition is, according to the books of the debtor, $5,000,000. Presently the bank probably has sufficient protection in the mortgaged property, but it is not to be overlooked that interest on its loan is accruing at the rate of $570.00 daily, besides taxes, insurance and other expenses, while rental income continues to be impaired by reason of the unfinished state of the center.

Moreover, it is readily perceived that the value of such an enterprise to the owner depends upon its productivity, and in turn to the rent payers the value of their store premises depends not only on the physical completeness of their own rented stores but largely upon the ability of the center to attract customers to the area by reason of the active operation of other stores. Delay in drawing into the shopping center a substantially full complement of tenants reduces the desirability of rented spaces and causes heavy losses in percentage rentals. Delay while the debtor searches out new sources of funds, not now in sight, would postpone actual work beyond the summer and fall months and completion would be unattainable before spring. Recently new tenants have not been applying for space, and are said to be by-passing this shopping center for another under construction in Norfolk that is free from the uncertainties and frustrations that afflict those wishing to transact business here. The asserted fear that serious damage to the business prestige of the center would result from further delay seems not farfetched. The losses thus occasioned could be very large.

Another complication to be feared from delay at this time is that a drainage easement granted Janaf is conditioned upon construction of the drainage system by January 1, 1961, and as a practical matter the work must be completed before freezing weather sets in. Expiration of the time limit without completion might entail disastrous consequences.

These are legitimate considerations in determining the risks involved in staying foreclosure in the hope of formulating a plan.

The District Judge took the view that with Chase Manhattan's lien for $3,475,000 and the second lien holder's mortgage for some $500,000, ranged in opposition to the petition, no plan of reorganization can possibly succeed, and that for this reason the petition must under the statute be regarded as not being filed in good faith. The relevance at this stage of the bank's opposition is that, even if some plan could subsequently be proposed, there could be no confirmation under section 179 of the Act, 11 U.S.C.A. § 579, without the approval of two-thirds in amount of claims of each class. The District Judge reasoned that since the bank, as holder of the first mortgage lien, is in a class by itself, its objection would effectively block the plan. He pointed out that even if both lien holders should be deemed to constitute a single class, the same result would follow.

Section 146(3) of the Act, 11 U.S.C.A. § 546(3), provides that a petition for reorganization is not in good faith if "it is unreasonable to expect that a plan of reorganization can be effected." See: Arey & Russell Lumber Co. v. American National Bank, 4 Cir., 1953, 201 F.2d 508 and Leas v. Courtney Co., 4 Cir., 1958, 261 F.2d 13.

We need not in this case go so far as to predicate a finding of lack of good faith within the meaning of the statute upon the expressed opposition of the lien holders. Such opposition is a factor to be weighed unless it is clear that the objecting creditors

would not be affected by the plan, but such opposition is not itself necessarily determinative of the question. In the present case, aside from the creditors' opposition, the impact of the facts outlined above makes it hopeless that any effective plan may be formulated. It is true that the scope of the court's inquiry in determining the good faith of the petition is narrower than when it considers the feasibility of a plan that has been filed after the appointment of a trustee for this purpose. Nevertheless, when it appears, as it does here, from an abundance of circumstances, that there is no reasonable prospect for any plan to succeed, the conclusion may be reached that the petition is not in good faith in the sense of the statute.

We likewise find it unnecessary to pass upon the objecting creditors' contention that actual bad faith is to be inferred from various steps taken by the debtor in and out of court with a view, according to the creditors, of causing delay.

The debtor contends that if given an opportunity to present a plan it might be able to interest investors to pay off the lien holders including holders of mechanic's liens. However, nothing tangible has been presented that supports such a hope. Despite the lapse of months while the parties were engaged in bitter controversy and the debtor was aware of the urgency of the situation, no prospective investor could be produced. The Massachusetts Mutual Life Insurance Company cannot be looked to for the permanent financing until the building plans have been fully carried out.

There is no discernible indication here that the Chase Manhattan Bank has been pressing the debtor unduly in order to get the property for itself or a favorite at a bargain price. Nothing points to inordinate harshness or oppressive conduct. On the contrary, the bank appears to have been indulgent and desirous to forfend the predicament in which Janaf now finds itself. Its motivation in resisting the petition seems to be the entirely proper one of avoiding jeopardy to its security. We think it would be in-

equitable in the circumstances, and contrary to the letter and spirit of the statute, to permit speculation at the security-holders' risk upon an expectancy vague and insubstantial.

The order of dismissal will be Affirmed.