In the Matter of **LIBERTY MORTGAGE CORPORATION, Debtor.**

**No. B 64–5617.**

United States District Court
N. D. Ohio, E. D.
April 23, 1965.

Saul Nadler and Donald Lefton, Cleveland, Ohio, for debtor.

William Scheid and William Cooney, Chicago, Ill., for Securities Exchange Commission.

Theodore R. Spilka, Cleveland, Ohio, for certain Secured Creditors.

Kenneth V. Nicola, Cleveland, Ohio, and James W. Childs, Van Wert, Ohio, for Creditors' Committee.

GREEN, District Judge.

This matter is before the Court on the motion of State Savings and Loan Company, a creditor, to dismiss the petition of Liberty Mortgage Corporation (hereinafter referred to as the debtor) for reorganization under Chapter X of the Bankruptcy Act.

On November 2, 1964 debtor filed an original petition for an arrangement under Chapter XI of the Bankruptcy Act. As a part of that proceeding certain creditors filed motions to have the debtor adjudicated bankrupt and thereafter a conditional order of adjudication of bankruptcy was entered. Although debtor's petition does not refer to the order of adjudication, the Court may take judicial notice thereof as it may take judicial notice of all matters of record in this court.

During the course of the Chapter XI proceedings, the Securities and Exchange Commission (hereinafter referred to as S.E.C.) filed a motion pursuant to section 328 of the Act (11 U.S.C. § 728) for dismissal, unless the debtor amended its petition for arrangement so as to comply with the requirements of Chapter X. There was a hearing before the Court on this question. After initial opposition, the debtor consented to the said motion, and an order was entered by the Court requiring debtor to dismiss or file a petition under Chapter X.

[2] The debtor thereafter filed its petition for reorganization under Chapter X. This motion was then filed attacking the "good faith" of the said petition.

Section 141 of the Act (11 U.S.C. § 541) provides:

Upon the filing of a petition by a debtor, the judge shall enter an order approving the petition, if satisfied that it complies with the requirements of this chapter and has been filed in good faith, or dismissing it if not so satisfied.

The term "good faith," as used in section 141, is defined in section 146 of the Act (11 U.S.C. § 546), which in pertinent part, provides:

Without limiting the generality of the meaning of the term "good faith", a petition shall be deemed not to be filed in good faith if—

\* \* \* \* \* \*

(3) it is unreasonable to expect that a plan of reorganization can be effected; or

(4) a prior proceeding is pending in any court and it appears that the interests of creditors and stock-

holders would be best subserved in such prior proceeding.

The Court set the petition and motion to dismiss for oral argument. Counsel for movant and the debtor appeared, and in addition counsel for the S.E.C. and counsel for certain secured and unsecured creditors attended, including counsel for the creditors committee and counsel for some of the largest unsecured creditors. All counsel who wished to make a statement relative to approval or dismissal of the petition were permitted to do so.

The nature of debtor's business is basically the buying and selling of real estate, with the ownership of some commercial rental properties.

The debtor had obtained financing from public investors by selling interest bearing investment notes, which presently are outstanding in the hands of about 900 persons in the principal amount of more than $2,000,000. In addition, the debtor has mortgage indebtedness of over $9,000,000.

Counsel for the debtor stated that the filing of approximately 200 foreclosure actions in the months preceding November, 1964 necessitated the filing of the Chapter XI petition. During the course of that proceeding an original and two modified plans were formulated. None of the plans was accepted by the creditors.

At the hearing on the petition and motion to dismiss, counsel for the debtor stated that in management's opinion they have a functioning operation based on 550 to 580 properties on sale to vendees under land contract. He stated that these properties were self-sustaining as to the first mortgages, but admitted that in those instances where second mortgages existed the income was insufficient to meet the total obligation. He further stated that while certain of the properties owned by the debtor were in a vandalized state, they were limited in number and might be sold to the municipal authorities under urban renewal, or rehabilitated if funds for repairs were available.

Counsel for the debtor stated that in his opinion the debtor could be reorganized based on the hard core land contract properties.

Counsel for movant, who also represents seven other creditors holding secured and unsecured claims, spoke in opposition to the petition. He argued that the petition cannot be considered in good faith, within the meaning of the statute, in that it is unreasonable to expect that a plan of reorganization can be effected.

He stated that the creditors whom he represented were opposed to the debtor's petition, and believed that the interests of creditors would best be served by a liquidation in bankruptcy.

Counsel for movant pointed out that two other companies engaged in similar ventures as the debtor are presently in bankruptcy in this court.

On a question of law, he urged that each of the 900 mortgages, both first and second mortgages, outstanding against the debtor constitutes a separate class, and that therefore it is unreasonable to assume that approval of any plan can be had.

Counsel for the S.E.C. spoke in favor of approval of the petition. He stated that it complied with the technical requirements of the Act, and further that a disinterested trustee could correct past errors of management.

Counsel for the unsecured creditors committee spoke in opposition to the petition. He stated that in the creditors' opinion the company was too far gone to be reorganized, and that the mortgage indebtedness was eating away the unsecured creditors' possible equity with each delay in the proceedings. He urged prompt liquidation in bankruptcy.

A similar statement was made by counsel representing holders of 10% of the value of the outstanding unsecured note debt. He stated that he believed that there was no hope for reorganization of the debtor unless a substantial influx of cash came to the business, which was not in sight. He also urged prompt liquidation in bankruptcy, stating that inaction

is the worst thing that could happen here.

Counsel for the secured creditor holding the greatest number of first mortgages (365) stated that the present delinquency on these mortgages was over $300,000 and it was steadily increasing. He asserted that in the past six months the debtor had failed to make any payments on about 10% of the outstanding loans.

Counsel for another secured creditor pointed out that although the Chapter XI receiver had substantially reduced the debtor's overhead, the receiver had nevertheless found it necessary to reduce the mortgage payments by 10%, under authority of court, in order to meet operating expenses.

In response to these statements of opposition, counsel for the debtor stated that because of the pending foreclosures and other litigation, the debtor has experienced difficulty in collecting on the land contracts. He stated that with reorganization under Chapter X the debtor projected a full realization on active land contracts of $80,000 monthly, against which there would be first mortgage obligations of $65,000 a month and overhead of $7,500, leaving a net of $7,500 a month. He stated that a fund for the benefit of unsecured creditors would be created by a realization of the full equities on the land contracts and the sale of some other properties.

The Court has given careful consideration to the debtor's petition, reviewed the statements made by counsel in open court, and also considered those matters of record of which judicial notice can be taken. The Court has concluded that this petition is not filed in good faith, within the statutory definition of that term.

█ It is the Court's conclusion that it is unreasonable to expect that a plan of reorganization can be effected for the debtor to continue its existence as a going concern, and that the only reasonable expectation for the debtor is liquidation. Congress did not intend resort to corporate reorganization proceedings under Chapter X of the Bankruptcy Act to be had for the mere purpose of liquidation. Fidelity Assurance Assn. v. Sims, 318 U. S. 608, 63 S.Ct. 807, 87 L.Ed. 1032 (1943).

█ The fact that this proceeding was altered from a filing under Chapter XI of the Bankruptcy Act to one under Chapter X thereof, upon motion of the S.E.C., is not, in the Court's opinion, of controlling import. As the Court interprets the decision of the Supreme Court in Securities and Exchange Commission v. American Trailer Rentals Co., 379 U.S. 594, 85 S.Ct. 513, 13 L.Ed.2d 510 (1965), and those authorities in conformity therewith, an attempt at reorganization of a debtor with widely held public debt must, in given circumstances, be had under Chapter X of the Act, rather than Chapter XI. The Court does not believe that American Trailer Rentals requires the Court to hold that a petition is in good faith simply because it is transferred, upon motion of the S.E.C., to Chapter X. The fact that adequate relief is not obtainable by a debtor's petition under the provisions of Chapter XI is but one of the elements of good faith specifically stated in the Act, Sec. 146, sub. 2, 11 U.S.C. § 546, sub. 2. While the granting of a motion under section 328 of the Act (11 U.S.C. § 728) may be determinative of that singular element of good faith, the Court cannot perceive in what manner it reflects on the other elements of good faith as set forth in the statute.

The Court has taken many factors into consideration in arriving at the conclusion that reorganization and rehabilitation of the debtor is not possible in this case.

The very nature of the debtor's business is self-liquidating. The debtor buys real estate and then resells it on land contract, with the profit margin providing working funds and return on investors' capital. As each parcel of real estate is sold, the debtor is left with cash, which may be re-invested in other real estate,

returned to the public investors or consumed in the cost of operations.

In order that the debtor continue as a functioning operation there must be a sufficient cash flow to permit the acquisition of new properties for the purposes of resale. In the absence of such cash flow, the debtor would be self-consuming. It is the Court's opinion that there has been no showing made that any possibility exists of securing such additional funds.

The debtor has projected a cash flow of $7,500 monthly from the continued operation of the business, based on its existing holdings. That projection, however, was based on a full return on all land contract properties, and did not take into account second mortgage obligations, which exist on many of them. Further, it was admitted that some vendees had defaulted on their land contract obligations on certain of the properties, although the number of such defaults was in dispute, and it can reasonably be expected that defaults would occur in the future. At such a happening, the property ceases to yield income, but rather imposes a burden in the form of taxes, maintenance and repairs, as well as the expenses of resale. These factors were omitted in the debtor's projection.

Further, assuming that a realization of $7,500 a month could be secured, the Court cannot perceive how this would be sufficient to create a fund to pay the interest and principal on over $2,000,000 in unsecured claims and still leave an excess for reinvestment.

Counsel for the secured creditors made it manifestly clear that the lending institutions would not advance the debtor further funds as a part of the Chapter X proceedings.

Counsel for the debtor, in stating that the fund to pay creditors would come from a realization of the equity in the existing hard core land contract properties, tacitly admitted that the debtor's physical assets would necessarily be liquidated in the process.

While the debtor owns certain properties that are held basically as rental properties, there had been no suggestion that a reorganization could be centered thereon. Such properties represent but a small portion of debtor's holdings, and both the petition and statements of debtor's counsel indicate that the rental properties are a drain on the debtor, rather than a source of revenue.

The petition filed herein, on its very face, indicates a liquidation. It states:

> The financially sound portion of the Petitioner's business can be continued in any event unimpaired by the sale or disposition of the non-income or reduced income producing properties. On this basis alone, the continued operation of the Petitioner's business on a substantial basis for the period within which the installment payments are required to be made under the land contracts (up to ten years) will insure the preservation of Petitioner's equity in the property (which is the excess of the land contract receivables over the liens) for unsecured creditors and stockholders.

The plain language of this statement is that the debtor is to be continued for so long as it takes to collect the outstanding land contracts.

Certain other actions have been taken by the debtor, and statements made on its behalf, which indicate that liquidation is inevitable and reorganization unreasonable.

Each of the plans submitted by the debtor under Chapter XI was essentially a plan of liquidation. The plans did not contemplate continued operation of the business as a going concern.

In initially opposing the motion of the S.E.C. to dismiss the Chapter XI proceeding, it was stated in a brief filed on behalf of the debtor:

> To institute this proceeding under Chapter X of the Act it is necessary to prove (Section 146) that it is reasonable to expect that a plan of reorganization can be effected.

As each secured creditor must consent in a Chapter X proceeding, this expectation generally did not previously and does not now exist.

■ This statement by the debtor leads to another factor the Court has taken into consideration—the virtually unanimous opposition to the Chapter X proceedings by the creditors, both unsecured and secured. While the opposition of creditors to a proposed Chapter X proceeding is not determinative, 6 Collier on Bankruptcy, p. 1782, it is a factor which should be given consideration, Janaf Shopping Center, Inc. v. Chase Manhattan Bank, 282 F.2d 211 (CA 4, 1960).

It is said by both the debtor and the S.E.C. that the Chapter X proceeding would be for the protection of the equity of the unsecured investor. The representatives of the unsecured investors, however, have made it quite clear that they do not concur in that view.

The Court has also taken into consideration the fact that two other concerns engaged in similar ventures are in bankruptcy in this court (Keystone Mortgage Co., No. B 63–3036 and Lincoln Mortgage Co., No. B 63–3250). While this is not determinative of debtor's prospects of future success, it is reflective of debtor's statement in the petition that:

> The rental, the unoccupied inventory and vandalized rental and inventory real estate are located primarily in areas designated for urban renewal or adjacent thereto. This property has suffered a temporary decrease in value due to the delay in the progress of the renewal plan and to the lack of adequate policing.

It is generally known that real estate values and sales activities in that area of the City of Cleveland wherein the bulk of debtor's holdings are situate, as disclosed by the files herein, have been substantially diminished in value in recent years.

It was suggested at the hearing that the debtor might branch off into the home modernization business or return to the home construction business as an additional source of revenue.

It appears, however, from the statements made by counsel for the debtor that the debtor's experience in the home modernization line was limited to maintenance and repairs on the debtor's own properties, and that the personnel who did that work are no longer employed by the debtor. As to the new construction business, the debtor was engaged in that venture for a very limited time, and that aspect of the debtor's operation was sold for an amount representing the debtor's investment therein.

■ It is the Court's opinion that the possibilities of a reorganization predicated upon a resumption of these abandoned areas of endeavor are purely speculative. Chapter X is not designed to afford a vehicle for visionary or impractical schemes for financial resuscitation. Breeding Motor Freight Lines v. Reconstruction Finance Corp., 172 F.2d 416 (CA 10, 1949); 6 Collier on Bankruptcy, p. 1790.

The Court considers equally speculative the statement contained in debtor's petition, and reasserted by counsel at the hearing, that:

> The property in the Urban Renewal Area, including the vandalized housing therein, may ultimately be purchased by the City of Cleveland at values prevailing before the property depreciated.

The Court does not believe that the debtor's worth, and the possibility of reorganization, can be measured by the exigencies of a prospective Urban Renewal program.

■ This Court recognizes that generally a Chapter X petition receives early approval, and the issue of good faith is determined upon trial of the issues following answers by creditors. 6 Collier on Bankruptcy, pp. 1633–34, 1748–49. The good faith of the petition, however, may be challenged by a motion to dismiss the petition, 6 Collier on Bankruptcy, p. 1635, and formal pleadings in opposition are not necessary for the

court to determine the question of good faith. In re Colorado Trust Deed Funds, Inc., 311 F.2d 288 (CA 10, 1962). It is, likewise, not required that the court take evidence on the issue of good faith if the issue can be resolved on the petition itself and matters of record before the Court. Janaf Shopping Center, Inc. v. Chase Manhattan Bank, 282 F.2d 211 (CA 4, 1960); Leas v. Courtney Co., 261 F.2d 13 (CA 4, 1958); In re Grigsby-Grunow Co., 77 F.2d 200 (CA 7, 1935).

Although certain statements were made at the hearing indicating that mismanagement, diversion of funds and actual bad faith were suspected herein, these considerations, which would have to be supported by evidence, are not essential to this decision.

In this case, the unsecured creditors have urged that the longer liquidation is delayed, the smaller their equity in the debtor becomes. This necessarily results as a consequence of mounting interest on the over $9,000,000 in secured claims and continuing depreciation of the realty. The Court has taken this into consideration, for it is the interests of these unsecured creditors which are paramount.

Accordingly, being convinced that on the record it has been amply demonstrated that there is no possibility of rehabilitating the debtor as a going concern by a Chapter X reorganization, the Court has concluded that the interests of the creditors would be best subserved by an immediate continuation with the pending bankruptcy proceeding.

It has been argued by counsel for the S.E.C. that in order to find that it is unreasonable to expect that a plan of reorganization can be effected the Court must find that it is irrational and completely futile to attempt to rehabilitate the debtor. The Court does not find that the case authorities support such an extreme test. The statutory language states that the guiding criteria is a reasonable expectation of reorganization. The fact that the disinterested trustee is charged with investigating the affairs of the debtor, 11 U.S.C. § 567, and either filing a plan of reorganization or reporting his reasons why a plan cannot be effected, 11 U.S.C. § 569, does not obviate the Court's duty to make an initial determination whether there is any possibility of a reorganization under Chapter X.

It is this Court's opinion that, based on all the considerations hereinbefore set forth, it is unreasonable to expect that a plan of reorganization can be effected for this debtor which would be anything other than a protracted plan of liquidation. The Court therefore finds that the petition is not filed in good faith within the meaning of section 146 of the Act (11 U.S.C. § 546) and orders the petition by debtor, Liberty Mortgage Corporation, for reorganization under Chapter X of the Bankruptcy Act dismissed.