In re Philip R. BLOOM, Mary Louise Bloom, Donald L. Egger, James W. Adams, Linda M. Adams, Debtors.

Bankruptcy Nos. SA80–00390 AP, SA80–00101 AP and SA80–00292 AP.

United States Bankruptcy Court,
C. D. California.

April 1, 1980.

Robert H. Stopher, Santa Ana, Cal., for debtors Bloom.

John M. Covas, Santa Ana, Cal., for debtor Egger.

Howard Kollitz, Sulmeyer, Kupetz, Baumann & Rothman, Los Angeles, Cal., for debtors Adams.

Shannon J. Haney, the Chapter 13 for the Santa Ana Bankruptcy Office was also present.

## MEMORANDUM OPINION

AARON K. PHELPS, Bankruptcy Judge.

These cases all present the problem of an "illusory" Chapter 13 plan. The debtors Adams list 60 creditors. They list a total of $45,374.17 as unsecured debt, but in addition to that dollar amount of debt the schedules list 10 creditors as to whose claim "any and all liability (is) denied." Three more creditors are listed with the amount owed being "unknown" and 26 more creditors are "listed as precaution" with no dollar amount owing stated. At the hearing on confirmation it was disclosed that there is a substantial question of dischargeability of some of the major debts. The plan proposes to pay the creditors 1 per cent, or a total of $453.74, which figure would perhaps be adjusted if it were determined that any of the many creditors listed as "liability disputed" or "amount unknown" or "listed as precaution" were able to establish a claim.

The Adams have assets consisting of an expected income tax refund of $6,337.00, savings accounts in excess of $1,000, several life insurance policies with cash surrender values, two automobiles and a 25 foot travel trailer encumbered for more than their value and a homestead with approximately $16,000 equity, various household goods and personal effects and a claim set forth in a lawsuit pending in the State Court wherein the debtor seeks to recover more than $12,000. They propose to pay the creditors in one lump sum of $500 from funds on deposit in their savings accounts.

The debtors Bloom list a total of 48 creditors and the unsecured debts scheduled total $273,614.00. Included in that amount is the claim of one creditor in the amount of $113,101.00 upon which there is a substantial dischargeability issue. The debtors propose in their plan to pay the creditors 1 per cent of the unsecured debt, or $2,736.14, at the rate of $184.00 per month. The debtors have no property other than a 1970 Dodge automobile, household goods and personal effects.

The debtor Egger lists 72 creditors including priority tax claims of $8,219.78 and general unsecured claims of $67,310.27. All of the priority taxes of $8,219.78 would be non-dischargeable in bankruptcy. A student loan to Egger would also be non-dischargeable, and there is considerable uncertainty as to whether there might be dischargeability problems on some 17 bad checks and on some 37 mechanics lien claims upon which there may be a contention that the debtor fraudulently obtained construction funds or lien releases. Egger lists as his property a pickup truck, a Mercedes automobile, household furniture and personal effects, and tools of his construction trade.

Egger proposes to pay his tax obligation in the amount of $8,219.78 in full at the rate of $200 per month, and to pay his general unsecured creditors whose debts total $67,310.27 an amount equal to one per cent of the debt, or $673.10, payable at the rate of an additional $75 per month.

Each of these plans is illusory. None of them constitute the best effort or indeed, any substantial effort, by the debtor, and none of them propose to pay to the creditor a reasonable sum based upon the debtor's ability to pay.

Instead, it is obvious that the motive of the debtor in proposing the plan, which might be variously described as illusory or nominal or token, is to gain the benefit of a Chapter 13 release as distinguished from the benefits of a release under Chapter 7 of the Bankruptcy Code.

It cannot be disputed that one of the major purposes of the American bankruptcy system is, as stated in *Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230, to "relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." To accomplish this beneficent purpose the American bankruptcy system has developed a unique feature which has not been present in most bankruptcy systems down through history and is still not present in most bankruptcy systems around the world even today. This "fresh start" concept is accomplished by giving to the debtor in a bankruptcy proceeding a discharge from his liabilities. The discharge provisions in the Bankruptcy Act of 1800, 1841, and 1867 were each different. See 1A Collier ¶ 14.01 page 1246.1. The Act of 1898 contained further developments upon the concept of discharge. Amendments were enacted which further developed the concept in 1903, 1910, 1926, 1938, and 1978.

It might be generally stated that the result of this long history concerning discharge produced three separate limitations. First, Congress has determined that a debtor who has committed certain types of wrongful conduct should not be released from his bills and the discharge should be totally denied. Secondly, Congress has consistently imposed a time limitation upon successive discharges. This limitation was first inserted in 1903 and was amended in 1926, 1938, 1952, and 1978.

The third limitation on the discharge is the principle that certain types of debts should be excepted from the discharge; and though the debtor might be released from the majority of his bills, certain types of bills should be non-dischargeable. This concept also has had a long history of development with different provisions in the Act of 1800, 1841, 1867, and 1898, and by amendments in 1903, 1917, 1922, 1938, 1960 and 1966, 1970 and 1978, as well as further changes set forth in the Bankruptcy Rules of 1973.

Of particular note is the new Bankruptcy Code enacted in 1978 and which became effective as to cases filed on and after October 1, 1979. The new Code continues the development of each of these three limitations upon discharge. That is, the honest debtor should be entitled to a release from his obligations, but (1) the discharge should be denied for certain types of wrongful conduct now set forth in great detail in § 727; (2) the debtor should not be granted a discharge if he has received a previous discharge in a case commenced within 6 years from the date of the filing of the new

case as set forth in § 727a(8); and (3) debts based upon certain types of liabilities should be excepted from the discharge as is further developed in § 523 of the new Code.

Thus it is obvious that the new Bankruptcy Code represents a substantial development and continuation in the long history of American bankruptcy law upon each of these three limitations upon discharge.

The history of Chapter 13 is considerably different. It apparently commenced with efforts made in a few districts, primarily in Atlanta, Georgia to use old § 77 to fashion a remedy for wage earners who wish to pay their bills. Chapter 13 as we now know it really began with the Chandler Act Amendments in 1938 which set forth in the statute for the first time specific provisions dealing with wage earner plans. The Act remained substantially unaltered until the adoption of a new Bankruptcy Code in 1978, except for the Bankruptcy Rules for Chapter XIII cases adopted by the Supreme Court effective in October, 1973.

Most Chapter XIII plans under the Bankruptcy Act were extension plans in which the debtor proposed to pay his creditors in full. Very few plans, at least in this district, were composition plans.

Section 656 of the Bankruptcy Act provided that the Court shall confirm a plan if satisfied, among other things, that the debtor has not been guilty of any of the acts or failed to perform any of the duties which would be a bar to the discharge. Section 660 of the Bankruptcy Act provided that upon compliance by the debtor with the provisions of the plan and upon completion of all payments to be made thereunder, the Court should enter an order discharging the debtor from all of his debts and liabilities provided for by the plan but excluding such debts as are not dischargeable under § 17 of the Act held by creditors who did not accept the plan. Thus, Chapter XIII under the Bankruptcy Act dealt with the three limitations on discharge, the dishonest debtor, the repeater debtor and the non-dischargeable debts. The provisions of the Bankruptcy Act were not changed in this respect by Bankruptcy Rule 13–404 and 13–407. The

rules merely set forth procedural matters without changing the substance of law.

The only major case dealing with these three issues during the period from adoption of Chapter XIII in 1938 to the present time was *Perry v. Commerce Loan Co.*, 383 U.S. 392, 86 S.Ct. 852, 15 L.Ed.2d 827, which held that a discharge in bankruptcy was not a bar to a Chapter 13 extension plan filed within six years of the earlier discharge case.

In adopting the new Bankruptcy Code in 1978 Congress made radical changes in the area now under consideration in at least three respects. First, there are now no grounds for objecting to a discharge in a Chapter 13 case. The grounds for objection to discharge set forth in § 727 of the Code apply only in the type of bankruptcy proceedings heretofore known as a "straight" bankruptcy, now referred to as a Chapter 7 bankruptcy. The net effect of this change is that the dishonest debtor as well as the honest debtor is now eligible for Chapter 13.

The second change was the removal of all time limitations for repeater or so-called "habitual" bankrupt. Under the new Bankruptcy Code it is quite conceivable that a debtor could file a new Chapter 13 case every year, or for that matter even monthly. The Code simply contains no time limitations upon an earlier discharge or earlier filing.

The third change provided by the new Code is that the debts which are accepted from the discharge under § 523 in a Chapter 7 bankruptcy shall nevertheless all be dischargeable in a Chapter 13 proceedings with two exceptions, that is, alimony and child support debts and a debt upon which the last payment is due after the date on which the final payment of the Chapter 13 plan is due, which we might paraphrase to be long term debts payable far into the future. The Code simply does not require that those long term debts be paid ahead of their due date.

It is therefore apparent that a discharge in a Chapter 13 case has three very substan-

tial advantages over a discharge in a Chapter 7 case. First, the dishonest debtor as well as the honest debtor can obtain a discharge in a Chapter 13 case. Secondly, a repeater or habitual debtor can obtain successive discharges in a Chapter 13 case whereas he can obtain a discharge in a Chapter 7 case only if he has not had a previous discharge within six years, and third, a discharge in a Chapter 13 case does not have the numerous and serious exceptions of particular debts which can be extremely troublesome to the debtor in a Chapter 7 case.

These cases now before me present an issue which is now flooding the Bankruptcy Courts in this area. That is, can a debtor avoid the three limitations on discharge involved in a Chapter 7 case by proposing a Chapter 13 plan with only nominal or token payments to the creditor? I call this type of plan the "illusory" plan.

I am able to find only two guideposts which point to the answer to this question. The first is in § 1325(a)4 which states that the Court shall confirm a plan if "the value . . . of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 . . ." This provision read literally appears to test the plan only by measuring the dollars to be distributed under the plan upon each unsecured claim as against the amount that would be paid on each unsecured claim if the case were a Chapter 7 liquidation case. Under this clause it would appear that if the case were a no asset case, so that no distribution would be made to the general unsecured creditors, then the payment to the creditors of 1 per cent under the plan, or of one dollar upon each claim, or the payment of a nickel or a penny upon each claim, or indeed no payment whatsoever upon the unsecured claims, would be "not less than" the amount that would be paid on the claim in a liquidation bankruptcy. It is this provision which counsel for the debtors must urge to justify confirmation of the "illusory" Chapter 13 plan.

The second provision in the new Code which is pertinent is again a portion of § 1325 which states that the Court shall confirm a plan if "(3) the plan has been proposed in good faith . . ." The term good faith is not defined in the new Code. There is as yet no decisive case authority which interprets the phrase.

To assist in interpreting the phrase I turn first to the general purposes of Chapter 13. These purposes are not found in the Code but instead are in the considerable body of literature concerning Chapter 13 plans. One purpose often stated is that the debtor wishes to avoid the stigma of bankruptcy. This is a substantial purpose, a purpose that is commendable, and one that should be encouraged by the courts as it has been encouraged by Congress. To confirm an "illusory" plan would have the effect of destroying this purpose. There is just as much stigma attached to a plan in which a debtor proposes to pay a dollar to each of his unsecured creditors or to pay 1 per cent of his debt to each of his unsecured creditors as there is in a straight bankruptcy proceedings.

Another purpose commonly mentioned is that a Chapter 13 proceedings is for a debtor who wishes to pay his bills. It is obvious that a debtor who files a Chapter 7 case and seeks a discharge from his liabilities has no motive of paying his creditors. Instead he has the motive of avoiding his obligations to his creditors. A debtor who files the nominal or illusory Chapter 13 plan is really no different. If he proposes to pay his creditors one dollar each or one per cent of the creditors' claims it cannot be honestly argued that this debtor wants to pay his bills and is seeking to work his way out of his financial troubles.

Chapter 13 has long recognized that there might be composition plans as well as extension plans. Under extension plans the debtor proposes to pay 100% of his obligations over a period of time, whereas under a composition plan the debtor proposes to pay some fractional proportion of his obligations. That fractional proportion might be

substantial such as 75% or it might be fairly low such as 10%. But in any event, the composition up to this time has had an element of control. Until the new Code was adopted the creditors have been entitled to vote on the question of whether or not to accept the offer made by the debtor in his plan. The new Code deprives the creditors of their heretofore existing privilege of voting upon the debtor's plan. Instead the only bar to confirmation is the Court's determination of the debtors good faith under § 1325a(3) and the requirement that the payments be not less than what the creditors would receive under the Chapter 7 liquidation pursuant to § 1325a(4).

It seems apparent from a study of the history of the former bankruptcy acts of 1800, 1841 and 1867 and a study of the history of the Bankruptcy Act of 1898 with its several amendments to the statutory sections here pertinent, and from a study of the changes made by the new Bankruptcy that Congress has intended to strengthen the provisions barring a dishonest debtor from a discharge limiting the time frequency of bankruptcy proceedings, and further developing the various exceptions to the discharge. But can it be seriously argued that Congress could have intended to adopt at the same time a scheme under Chapter 13 which would render totally illusory the creditor protections and the debtor limitations set forth in the three principles of the dishonest debtor, the repeater or habitual bankrupt, and the various exceptions to the discharge? Such a congressional purpose seems inconceivable to me.

There are a few indications in the new Code that Congress intended the payments to be made by debtors to be reasonable in the light of all circumstances and to be substantial. Section 109(e) and Section 101(24) speaks of an "individual with regular income." If the payment to creditors in the Chapter 13 plan is permitted to be purely illusory, the requirement that the debtor need have regular income becomes useless. Section 1322(b)(8) states that the plan may provide for the payment of claims from property of the estate or property of the debtor. This seems to imply that Congress

contemplated that the payment to be made by the debtor should be substantial and reasonable since it is an enlargement of the source of payment to the creditors from that stated under the Act, in which the sole source of payment was wages to be earned in the future.

Section 1325a(6) requires the Court to find as a condition of confirmation that the debtor will be able to make all payments under the plan. This provision also implies that the payments shall be substantial and reasonable in the light of all circumstances. Otherwise the requirement of a court finding of feasibility is useless.

Section 727a(9) states that the court shall not grant a discharge to a debtor in a Chapter 7 case where the debtor has received a discharge under Chapter 13 of the Code or the Bankruptcy Act within six years, unless payments under the plan in the Chapter 13 case totalled 100 per cent of the allowed unsecured claims, or, totalled at least 70 per cent of such claims and the plan was proposed by the debtor in good faith and was the debtors best effort. This section seems to imply that Congress specifically had in mind the problem of the "repeater" debtor with reference to Chapter 13 cases, and that Congress determined that the debtor should not be given a Chapter 7 discharge if he had had an earlier discharge within 6 years in a Chapter 13 case, unless the payments to the creditors were substantial. The section does not specifically prohibit repeater Chapter 13 cases, but it seems clear that Congress had in mind a substantial Chapter 13 case rather than an illusory Chapter 13 case.

It is obvious that debtors all over the country are seeking to use Chapter 13 as a way of avoiding the three above mentioned limitations upon a Chapter 7 discharge. In cases where the debtor would be denied his discharge for some wrongful conduct, or would be denied his discharge as a "repeater" debtor, or if there is a substantial likelihood that one or more debts might be excepted from the discharge under Chapter 7, the debtors are now proposing to evade

those limitations by making only an "illusory" payment to creditors. It is my opinion that a bankruptcy case does not become a Chapter 13 case merely by calling it a Chapter 13 case. If its real motive and purpose is to obtain a discharge of the debts without a reasonable and substantial payment to the creditors, and if the true purpose of attaching the label of "Chapter 13" to the case is to evade the discharge limitations in a Chapter 7 case, the court should recognize the case for what it is, an illusion. I therefore find that the illusory Chapter 13 plan is not in good faith.

This conclusion agrees with the conclusion of various of my brother bankruptcy judges. *In re Iacovoni*, 2 B.R. 256, Bkrtcy., CCH Bankruptcy Reporter ¶ 67335, Bankruptcy Judge Mabey refused confirmation of several Chapter 13 plans in which no payment was proposed to be made to the general unsecured creditors. Judge Katz of the Southern District of California has denied confirmation of 1 per cent plans in *In re Howard*, No. 79–03156–KZ, 3 B.R. 75 and *In re Campbell*, Case No. 80–00049–KZ, 3 B.R. 57, and *In re Lucas*, No. 80–00007–P, 3 B.R. 252. Judge Conley Brown of the Northern District of California has refused confirmation of a zero distribution plan in *In re Fonnest*, Case No. 79–00825. Judge Sidman of the Southern District of Ohio, Eastern Division has denied confirmation of a zero plan in *In re Godfrey*, case number 2–79–03087.

This memorandum opinion shall constitute findings of fact and conclusions of law pursuant to FRCP 52a.