**In the Matter of Ronald Duain COOK, Debtor.**

**Bankruptcy No. 79-20348.**

United States Bankruptcy Court, S. D. West Virginia.

April 3, 1980.

Robert Poyourow, Charleston, W. Va., for debtor.

## MEMORANDUM OF OPINION

EDWIN F. FLOWERS, Bankruptcy Judge.

Objection is made to the confirmation of a Chapter 13 "Plan" which provides no payment to any creditor.

The Debtor received a discharge of his debts five years ago and now files a petition under Chapter 13 of the new Bankruptcy Code (11 U.S.C. § 1301) for relief as an individual with regular income.

His Chapter 13 Statement demonstrates that his monthly living expenses exceed his income by $3.34 and consequently he cannot realistically propose paying his creditors anything.

Subsequent to the confirmation hearing and accompanying the Debtor's memorandum on the legal issues raised, a Modified Plan was filed which pledged payments of $10.00 monthly to the trustee. The Debtor in his memorandum concedes that Section 101(24)[1] is "persuasive authority for the requirement that some payment be made" and for this reason proffers the $10.00 monthly sum.

Unfortunately for the Debtor, this modification does not resolve his problem, it only crystalizes it.

Section 1325(a), which some interpret as setting the standards for confirmation, requires a finding that "the debtor will be able to make all payments under the plan. . . . " (subsection 6). If the Debtor could not afford any payments toward a plan initially (having expenses which exceeded his income by $3.34) this belated gesture of compliance is rather hollow. He cites no additional income nor reduced expenses to support such a payment.

Additionally, an extension, not a composition of debts is proposed, which means that even if the Debtor could afford $10.00 monthly, the plan will require 95 years to complete. This substantially exceeds the five year maximum payout period which the Court may approve under Section 1322(c).

While either of the foregoing conclusions would be sufficient to preclude confirmation in this case, the original arguments will be dealt with rather than inviting further experimentation or leaving similar matters for speculation in this district.

It will be remembered that the Debtor came initially candidly asserting that he chose Chapter 13 since he was not entitled to a discharge in Chapter 7 due to the six year ban.[2] He assured his creditors that

---

1. Section 101(24) provides:
   "individual with regular income" means individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13 of this title, other than a stockholder or a commodity broker.

2. Section 727(a) provides:
   The court shall grant the debtor a discharge, unless . . . (8) the debtor has been

**482**

they were no worse óff by his choice since they wouldn't have received anything had he chosen a liquidation under Chapter 7. There do not appear to be any creditors with secured claims and the Debtor's assets fall within the Federal Exemption allowance of Section 522(d).

The two creditors which objected to confirmation insisted that such a "zero payout" plan as this is vulnerable in several respects: First, it is, in reality, no "plan" at all and thus fails to meet the plain, simple requirement of Section 1321 that "(t)he Debtor shall file a plan"; Second, if it is in any sense a "plan" it is not such a proposal that could be considered as offered "in good faith" as suggested by Section 1325(a)(3); and Third, confirmation of this Plan would invoke the discharge provisions of Section 1328(a) and result in circumvention of the expressed bar of more than one discharge every six years found in Section 727(a)(8).

The Debtor concedes that the results may seem unusual but answers that his approach meets all the requirements of Chapter 13.

First, he defends his "zero payout" plan as complying with Section 1322 of the Code. Nowhere in the mandatory provisions (subsection (a)), the permissive items (subsection (b)) or the duration limitation (subsection (c)) is there any minimum payout specified. Next, he contends that he is proceeding in "good faith" because he could not offer his creditors anything in "good faith" when it is clear that he has nothing left over each month. Lastly, he acknowledges that he will get a discharge under Chapter 13 when he would not be as fortunate under Chapter 7, but he observes that Congress intended to make Chapter 13 more attractive and he applauds its singular success.

While the Debtor's counsel is to be commended for his resourceful advocacy, I cannot concur in two out of three of his conclusions.

granted a discharge . . . under section 14 . . . of the Bankruptcy Act in a case commenced within six years before the date of the filing of the petition. . . .

## I
### The Plan

■ A proposal to pay creditors nothing is not a Plan in the context of Chapter 13. The absence of a precise requirement in Section 1322 for a payout to creditors does not excuse its omission from a Plan. Some distribution to creditors is presumed within the requirement of Section 1321 to "file a plan."

This conclusion is amply supported by the legislative history and by the import of other sections of the Bankruptcy Code.

Repeated references are found in the legislative history to the effect that the Chapter 13 Plan is a proposal to pay creditors, not an announcement that they are to be avoided.

In the House Report [3] we find:

(C)hapter 13 encourages more debtors to repay their debts over an extended period rather than to opt for straight bankruptcy liquidation and discharge. *Id.* at 5 U.S.Code Cong. & Admin.News 1978 at 5966.

.    .    .    .    .

The purpose of chapter 13 is to enable an individual, under court supervision and protection, to develop and perform under a plan for the repayment of his debts over an extended period. In some cases, the plan will call for full repayment. In others, it may offer creditors a percentage of their claims in full settlement.

.    .    .    .    .

. . . In a liquidation case, the debtor must surrender his nonexempt assets for liquidation and sale by the trustee. Under chapter 13, the debtor may retain his property by agreeing to repay his creditors. *Id.* at 118, U.S.Code Cong. & Admin.News 1978, at p. 6079.

.    .    .    .    .

. . . The bill permits great flexibility in the formulation of the plan. The

3. House Rep.No. 95–595, 95th Cong. 1st Sess. (1977) U.S.Code Cong. & Admin.News, 1978, p. 5787.

only requirements are that the debtor pay all priority claims (mainly administrative expenses and certain taxes) in full, and submit such portion of his future earnings to the supervision of the court as is necessary for the execution of the plan. The plan may provide for full or partial payment of creditors, over any period up to three years, and with the court's approval, up to five years. *Id.* at 123, U.S. Code Cong. & Admin.News 1978, at 6084.

The Senate similarly perceived Chapter 13 as means of debt repayment.

The new chapter 13 undertakes to solve these problems insofar as bankruptcy law can provide a simple yet precise and effective system for individuals to pay debts under bankruptcy court protection and supervision. The new chapter 13 will permit almost any individual with regular income to propose and have approved a reasonable plan for debt repayment based on that individual's exact circumstances. As in current law, 100 percent payment plans will be encouraged by the limitation on availability of a subsequent discharge in section 727(a)(8). This kind of plan has provided great self-satisfaction and pride to those debtors who complete them and at the same time effect a maximum return to creditors. The limitation of § 727(a)(8) will also provide a slight brake on the wholesale filings of chapter 13's by small businessmen who wish to avoid some of the restrictions of chapter 11. It is also necessary to prevent chapter 13 plans from turning into mere offers of composition plans under which payments would equal only the non-exempt assets of the debtor. S.Rep.No. 95–989. 95th Cong., 2d Sess. 13 (1978) U.S.Code Cong. & Admin.News at 5799.

This theme is continued in the explanation of Section 1322. "Chapter 13 is designed to serve as a flexible vehicle for the repayment of part or all of the allowed claims of the debtor. Section 1322 emphasizes that purpose by fixing a minimum of mandatory plan provisions." *Id.* at 141, U.S.Code Cong. & Admin.News 1978, at 5927.

The legislative intent that Chapter 13 provide a means of debt repayment is amply reflected in many sections of the Chapter.

Section 1326 entitled "Payments" refers to "payment to creditors under the plan . . . ."

Section 1328 regarding "Discharge" provides for two alternatives; (a) where a debtor makes "all payments under the plan, . . . ." and (b) where the debtor "has not completed payments under the plan . . . ."

Section 1322(a) requires "full payment . . . ." of certain claims (subsection (2)) and the "submission of all or such portion of future earnings . . . as is necessary for the execution of the plan. . . . ." subsection (1).

Section 1322(c) disapproves "payments over a period that is no longer than three years . . . ." but presupposes the plan will provide some payments.

Section 1325(a)(2), (4) and (5) all associate the "plan" with payments as do the subsections of Section 1322(b).

These are more than enabling provisions. They are the very heart of Chapter 13 relief which is payment to creditors.

A proposal in Chapter 13 which does not provide for some payment to creditors is not a "plan," it is a scheme, and it leaves its proponent deficient in meeting the simple requirement of Section 1321 that "The debtor shall file a plan." *In re Iacovoni,* 2 B.R. 256, 5 Bankr.Ct.Dec. 1270, 1273 (D.Utah 1980).

The payment will usually be made from the future earnings of the debtor (Section 1322(a)(1)) but it may be made from his property or the property of the estate. Section 1322(b)(8). In either event, the plan must provide for payment in some form to satisfy the requirement of Section 1321. 5 *Collier on Bankruptcy,* ¶ 1322.01[1], at 1322–3 (15th ed. 1979).

The Debtor correctly acknowledges that even the definitional section requiring "sufficiently stable and regular" income (Section 101(24), Note 1 *supra* ) would be mean-

ingless if payments under a Plan were optional.

Hardship circumstances do not alter this requirement. A debtor's confession that he is unable to pay his creditors anything does not become a "Plan" by covering it with a Chapter 13 petition.

## II

### Good Faith

The Plan, being the debtor's proposal to pay creditors, must pass several tests before it merits confirmation.

Some creditors must receive special attention, i. e., creditors with priority claims (Section 1322(a)(2)), secured claims (Sections 1325(a)(5) and 1322(b)(2)), fee claims (Section 1325(a)(2)), and post petition claims (Section 1305) while other creditors are assured of equitable consideration among their number as classes (Sections 1322(a)(3), 1322(b)(1) and (4)).

When certain additional requirements are met, the Court is obligated to confirm the Plan. These include a finding that the debtor will be able to carry out his plan (Section 1325(a)(6)), that the plan complies with all provisions of the Bankruptcy Code (Section 1325(a)(1)), that unsecured creditors will receive "not less than the amount that would be paid . . . ." in a Chapter 7 liquidation (Section 1325(a)(4)), and that "the plan has been proposed in good faith and not by any means forbidden by law. . . . " (Section 1325(a)(3)).

Of these requirements, only the latter one pertaining to "good faith" presents much of an interpretation problem.

In this case the objecting creditors contend that a proposal to pay them nothing yet request a discharge which would be denied under Chapter 7 demonstrates a lack of "good faith" by the Debtor. The Debtor denies that "bad faith" is demonstrated by seeking the fullest advantage the law allows.

The "good faith" language is similar to that found in the old Act[4] and Rules[5] but I believe it serves an entirely different function in Chapter 13 of the new Code. It is necessary that it serve a different function because Chapter 13 offers a discharge of more debts, more often than Chapter 7. 5 *Collier on Bankruptcy, supra,* at ¶ 1325.-01[2][F], p. 1325–29, ¶ 1328.01[1][c], pp. 1328–3, 1328–4, ¶ 1328.01[2][c], p. 1328–7. A "good faith" plan is the price exacted by Chapter 13 for its more generous relief.

More debts are discharged in a Chapter 13 case since only long term debts which extend beyond the repayment period of the plan (Section 1328(a)(1)) and family support obligations (Section 1328(a)(2)) are excepted from operation of the discharge. The Chapter 7 discharge (Section 727(b)) would include the long term debts but would except the entire list found in Section 523(a). Only if a Chapter 13 debtor failed to complete the payments under his plan, would the scope of his discharge be reduced to become the same as the debts covered by the Chapter 7 discharge. Sections 1328(b) and 523(a). Thus, the Chapter 13 debtor gets the equivalent of a Chapter 7 discharge even if he does not complete his plan. He has only to meet three conditions to get this so-called "hardship" discharge. Section 1328(b).[6]

Not only are more debts discharged for the Chapter 13 debtor who completes his plan, but additionally, the Chapter 13 debtor is not restricted in the frequency of his discharges. This is in sharp contrast to the limitation found in section 727(a)(8) that bars more than one discharge in a liquidating bankruptcy every six years.

If there were no offsetting price, it would seem a terrible blunder to ever file a Chapter 7 liquidation for individuals who are eligible under Chapter 13. I believe the price is the requirement, that "the plan has

---

4. Section 651, Bankruptcy Act, (11 U.S.C. § 1051).

5. Rule 13–213(a), Rules of Bankruptcy Procedure.

6. *See also,* J. Lee, *Chapter 13 nee Chapter XIII,* 53 Am.Bankr.L.J. 303, 323–325 (1979).

been proposed in good faith . . . ." Section 1325(a)(3). What I have referred to as the "offsetting price" embodied in the good faith requirement, is perhaps more aptly described in *Iacovoni* as the "substantive content which affects the effort and payments on unsecured claims . . . ." *Iacovoni, supra,* 2 B.R. at 266, 5 Bankr.Ct. Dec. at 1276.

The "good faith" requirement not only imposes some burden which would justify the more generous relief of Chapter 13, it keeps Chapter 7 from becoming a meaningless portion of the Code as far as the individual debtor is concerned. The relief provided by Chapters 7 and 13 can more logically be explained and integrated if the "good faith" clause carries this added baggage.

■ Accordingly, I conclude that the "good faith" requirement has a dual nature; it is a matter of intention adequately consummated. The plan must be proposed with an intention that is consistent with the purpose of the Chapter, to pay creditors, and that intention must be consummated adequately enough to merit the more generous relief available in this Chapter.

The debtor's intention, as demonstrated by his plan, must be to make a reasonable effort at debt reduction. After integrating the very few mandatory provisions recited in Section 1322(a) with the debtor's selection of optional provisions from subsection (b), the result must be a plan that achieves the purposes which Congress perceived being served by Chapter 13.

Those purposes include encouraging "more debtors to repay their debts over an extended period rather than to opt for straight bankruptcy . . . ." House Rep., *supra* at 5, U.S.Code Cong. & Admin. News at p. 5966; recognizing "that use of the bankruptcy law should be a last resort; that if it is used, debtors should attempt repayment under Chapter 13 . . . ." *Id.* at 118, U.S.Code Cong. & Admin.News at p. 6070; encouraging "100 percent payment plans (to provide) great self-satisfaction and pride to those debtors who complete them . . . ." S.Rep. *supra* at 13, U.S. Code Cong. & Admin.News at 5799.

Congress intentionally, and for good purpose, made the formulation of a Chapter 13 plan "more flexible." H.Rep. *supra* at 117, U.S.Code Cong. & Admin.News, 1978, p. 5787. It condemned as "overly stringent and formalized" the requirements of old Chapter XIII. *Id.* Significantly, it dispensed with the requirement of consent to the plan from unsecured creditors. *Id.* at 123.

While indulging "great flexibility" to the debtor and stripping creditors of their veto power over the plan, Congress did not leave the debtor bridled only by his imagination. *Id.*

The "good faith" provision is the scale on which the debtor's handiwork must ultimately be weighed. If he meets the specific statutory requirements and then uses the flexibility allowed him in what amounts to good faith, the broader discharge and the opportunity for successive use of the Chapter will not result in abuse of either creditors or the system. That is not to suggest that the proper and legitimate use of Chapter 13 will or should take the place of paying one's debts in the traditional manner. It does suggest that the proper and legitimate use of Chapter 13 need not be time-rationed nor confined to the discharge dimensions of Chapter 7.

■ To propose a plan in "good faith," the debtor must take into account the nature and extent of his assets, calculate his prospective net income after prudently but realistically determining his future living expenses, consider the amount and nature of his indebtedness, determine whether a three-year extension using any combination of present and future resources would retire all indebtedness and, if not, what percentage could be offered in composition of the total indebtedness. While this is not markedly different from the mental process employed by a "wage earner" under old Chapter XIII, let me be not too subtle in suggesting that the process progresses toward answering the question "how much can I pay?" rather than starting out trying

to determine "how little can I get by with paying." It is the inference of the latter that worries me about any percentage rule of thumb. While a rule or percentage guideline is easy in application, the emphasis tends to be "how little is enough?" rather than "how much is possible?" It may be that a debtor whose preoccupation is determining the least that the Court will accept, is approaching Chapter 13 relief from the wrong direction.

We must avoid the notion that this form of relief was intended for all. Some debtors, from either lack of sufficient desire or lack of sufficient means will be left to Chapter 7 for relief from their debts. Congress recognized this fact.[7] The Courts should not do less.

It is where the intention is admirable but the income is lacking that we face the greatest problem in applying the good faith standard. There the intention is not adequately consummated and an "under financed" plan results.

■■■ Others have found a ten percent composition plan to be an adequate demonstration of good faith. *In re Curtis*, 2 B.R. 43, 5 Bankr.Ct.Dec. 1214 (W.D.Mo.1979). I believe the adequacy of the plan depends upon the extent to which the debtor is invoking the special relief afforded by the Chapter. Where otherwise nondischargeable debts are provided for by the plan and will be discharged, a more significant percentage should be required. Similarly, when the time since a prior discharge in bankruptcy is relatively short, the percentage proposed for creditors should be higher. Thus, a debtor who has no dischargeable debts but who received a discharge five years ago would adequately meet the good faith requirement by a ten percent composition if that was the maximum feasible sum he could muster. At the other extreme, a debtor who seeks a discharge from otherwise nondischargeable debts when he was discharged a year ago should be expected to propose a full payment of debts within the three year extension period.

Such a sliding scale is more equitable and more completely integrates the provisions of Chapter 7 with Chapter 13. *Iacovoni, supra*, 2 B.R. 256, 5 Bankr.Ct.Dec. at 1277.

This interpretation of the good faith requirement spares us from the anomalous result that a debtor who proposes to pay nothing fares better than one who tries to pay his debts but fails.[8] It is consonant with the theory that only debts "provided for" by the plan are discharged[9] and this precludes their discharge by paying nothing. Finally, it approximates the result of Chapter 7 as to when a short hiatus discharge may be awarded.

Section 727(a) provides:

The court shall grant the debtor a discharge, unless—

.    .    .    .    .

(9) the debtor has been granted a discharge under section 1328 of this title, or under section 660 or 661 of the Bankruptcy Act, in a case commenced within six years before the date of the filing of the petition, unless payments under the plan in such case totalled at least—

(A) 100 percent of the allowed unsecured claims in such case; or

(B) (i) 70 percent of such claims;

and

(ii) the plan was proposed by the debtor in good faith, and was the debtor's best effort. .    .    .

This section of course is not applicable in a Chapter 13 case but, by using it as a mirror on the occasion of a debtor's second

---

7. H.Rep. *supra* at 125, U.S.Code Cong. & Admin.News 1978, at p. 6086 recites:

Some consumer debtors are unable to avail themselves of the relief provided under chapter 13. For these debtors, straight bankruptcy is the only remedy that will enable them to get out from under the debilitating effects of too much debt.

8. See discussion of Section 1328(a) and (b), *supra*, at 484.

9. *See, Countryman,* Letter to the Editor, 85 Commer.L.J.

bankruptcy experience, we can discern by the reflection something about the earlier Chapter 13 experience. To qualify for a Chapter 7 discharge in less than six years after a Chapter 13 discharge, the debtor's Chapter 13 plan must have resulted in payment of all the allowed unsecured claims or, alternately, in payment of 70% of those claims which was the debtor's "best effort" on a plan proposed in good faith.

Thus, a plan which failed to (1) propose a 100% extension and achieve at least a 70% payout of claims as a "best effort", or (2) propose a 70% composition which was fully paid out, could not qualify the debtor for a short hiatus discharge in Chapter 7. Where the second filing by the debtor is also in Chapter 13, there is good reason to omit this rigid performance standard from the first filing if something comparable is expected by way of performance in the second filing.

A Chapter 13 filing, which may happen to occur within the six-year period following an earlier Chapter 13 discharge, must result in some payment to creditors. That payment, if, in addition to meeting the best interest of creditors' test, also meets a good faith standard which is relative to the special or extraordinary relief sought, justifies both the more frequent availability of a discharge and the broader range of debts which are discharged in Chapter 13.

This effect given the "good faith" provision of Section 1325(a)(3) assures the flexibility in Chapter 13 which Congress intended.

At the same time, determining good faith according to the debtor's circumstances will provide the "slight brake on the wholesale filings . . .." and "prevent chapter 13 plans from turning into mere offers of composition plans . . .." condemned in the legislative history.[10]

For these reasons the objection to confirmation of the Debtor's plan is sustained and confirmation is denied.