**In re Frederick V. DANT, Joan C. Dant, Debtors.**

**Bankruptcy No. 80–00474.**

United States Bankruptcy Court,
E. D. Virginia,
Richmond Division.

Feb. 10, 1981.

John A. Lucas, Hunton & Williams, Richmond, Va., for the debtors.

**118**

William C. Parkinson, Jr., Richmond, Va., trustee in bankruptcy.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

On April 8, 1980, Frederick V. Dant and Joan C. Dant, Debtors herein, filed a Voluntary Joint Petition in Bankruptcy under Chapter 13 of Title 11 of the United States Bankruptcy Code pursuant to § 302 thereof. On April 18, 1980, a plan was filed by the Debtors as required by § 1321 of the Bankruptcy Code (11 U.S.C.). William C. Parkinson, Jr., standing Chapter 13 trustee, in his Recommendation of Standing Trustee, filed July 22, 1980, recommended that the plan not be confirmed for the reason that "[t]he plan has not been proposed in good faith, nor does it meet the best efforts test 1325(a)(4)." On July 25, 1980, a hearing on the confirmation of the plan was held as prescribed by § 1324 of the Bankruptcy Code (11 U.S.C.). On October 3, 1980, pursuant to a request to reopen the confirmation hearing previously held in the matter, an additional confirmation hearing was held at which time the Court requested briefs to be submitted. Upon the receipt of said briefs, and upon the foregoing, the Court renders the following opinion.

## STATEMENT OF THE FACTS

Mr. Dant is a crane operator for Brown & Root Company of Virginia, is married to Joan C. Dant, a housewife, and has four children. Neither he nor his wife has been in bankruptcy prior to the current Chapter 13 proceeding. Since the filing of the Chapter 13 petition and plan, the Debtors have been able to adhere to their proposed budget, and have in fact, been able to save a few dollars.

The Debtors' schedules filed in this proceeding reflect that the Debtors own real and personal property valued at $3,213. With the exception of two automobiles, an offset camera, and miscellaneous jewelry, all the Debtors' properties have been exempted under applicable Virginia exemption statutes. There are no unencumbered assets available for liquidation and distribution to creditors. The debt of the Debtors, as reflected in the schedules, total $13,863.65.

The plan provides for the retention of the lien of Commercial Credit Plan Industrial Loan Company (Commercial Credit) on the two automobiles. In addition, the plan provides that the Debtors pay into the plan the sum of $20 per month for distribution to Commercial Credit up to the sum of $600, which represents the value of the automobiles ($350) plus an additional $250. The additional $250 proposed to be paid to Commercial Credit is being offered due to "the good relationship the Debtors have enjoyed with Commercial Credit" and due to the willingness of Commercial Credit to "work with the Debtors when the Debtors were unable to obtain financial assistance from any other source." The plan further provides for the surrender of the offset camera to the estate to Robert Nester, the holder of a security interest. With the exception of $250 of the unsecured portion of the debt to Commercial Credit, the plan provides for no payment of dividends to the unsecured creditors.

The budget provided in the schedules reflects a total monthly income of $1,473.66 and a total estimated average, future monthly expense of $1,443, resulting in the net excess of estimated income over estimated expenses of $30.66. At the confirmation hearing, Mr. Dant testified that his take-home pay averages $318 per week ($1,378 per month) and that Mrs. Dant receives $212.50 per month in child support, producing a revised total monthly, average income of $1,590.50. Due to changes in rent, food and automobile insurance since filing, his monthly budget for living expenses now totals $1,558, creating an excess of monthly income over expenses of $32.50.

The creditors would receive no more in liquidation than they would have received under the plan. The fair market value of the scheduled property of the Debtors is accurate. There is a valid and perfected

security interest in favor of the secured creditors on the automobiles and offset camera. The watch and miscellaneous jewelry valued at a total sum of $30 have not been considered in determining the availability of property for the payment of a dividend to creditors.

## CONCLUSIONS OF LAW

The general question presented for determination to this Court is whether a plan under Chapter 13 which proposes no payments or *de minimus* payments to unsecured creditors is confirmable under § 1325 (11 U.S.C.). Each provision of said section must be complied with to enable this Court to confirm the plan.[1]

The entire thrust of Chapter 13 is to allow a debtor to propose a plan which will enable him to repay his creditors some percentage of his outstanding debt. Chapter 13 contemplates payments to creditors. *In re Terry*, 630 F.2d 634, 635 (8th Cir. 1980); *In re Hobday*, 4 B.R. 417, 3 Bankr.L.Rep. (CCH) 78179, 78180 (Bkrtcy.N.D.Ohio 1980); *In re Cook*, 3 B.R. 480, 3 Bankr.L.Rep. (CCH) 77995, 77996–97 (Bkrtcy.S.D.W.Va. 1980); *In re Iacovoni*, 2 B.R. 256, 262–63 (Bkrtcy.D.Utah 1980). Further a Chapter 13 plan must propose repayment to *unsecured* creditors. *Hobday, supra,* 4 B.R. 417, 3 Bankr.L.Rep. (CCH) at 78180–81; *Iacovoni, supra* at 264–65.

Sections 109(e) and 101(24) set forth the criteria to qualify as a Chapter 13 debtor.[2] If a debtor cannot make payments (or only *de minimus* payments) to his unsecured creditors for the reason that his income is insufficient to provide a regular payment to fund a plan, the debtor is not eligible for Chapter 13 relief under § 109(e), and any proposed plan is unconfirmable as a violation of § 1325(a)(1).[3] *Terry, supra* at 635.

Moreover, the plan is in violation of § 1325(a)(1) in that it unfairly discriminates between classes of unsecured creditors by providing an additional $250 repayment to Commercial Credit's unsecured portion of the debt, but providing nothing to the remaining unsecured creditors. *See* § 1322(b)(1). This Court does not consider the "willingness of Commercial Credit to work with the Debtors" a rational basis or fair classification as against the remaining unsecured creditors. Such a classification is nothing more than preferential treatment of one creditor over another as the Debtors see fit.

The *de minimus* plan also violates § 1325(a)(3) of the Bankruptcy Code (11 U.S.C.), a separate and distinct provision which requires that the plan be proposed in "good faith".

"Good faith" has not been defined in the Bankruptcy Code. It has created a variety of opinions as to what constitutes good faith. Compare, *In re Burrell*, 2 B.R. 650, 5

---

1. The provisions of § 1325 in question are set forth below:
   "(a) The court shall confirm a plan if—
   (1) The plan complies with the provisions of this chapter and with other applicable provisions of this title;

   .    .    .    .    .

   (3) the plan has been proposed in good faith and not by any means forbidden by law;
   (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of cash allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date; . . ."

2. ". . . an individual with regular income and such individual's spouse, . . . that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $100,000 and non-contingent, liquidated, secured debts of less than $350,000 may be a debtor under chapter 13 of this title." 11 U.S.C. § 109(e)

   ". . . 'individual with regular income' means individual whose income is sufficiently stable and regular to enable such individual to make payments under chapter 13 of this title. . ." 11 U.S.C. § 101(24)

3. While counsel for the Debtors objects to the Trustee's inclusion of additional grounds for denial of confirmation in his brief, this Court is required to make an independent assessment of the plan in light of § 1325. *See Iacovoni, supra* at 268. The Debtors are not damaged by this independent review for they may amend their plan to conform to the objections raised at confirmation by this Court.

B.C.D. 1321 (Bkrtcy.N.D.Cal.1980)[4] in which the court held good faith required at least 70% payout to unsecured creditors with *In re Cloutier*, 3 B.R. 584 (Bkrtcy.D. Colo.1980), holding no payments necessary to unsecured creditors to meet requirement of "good faith". This Court has previously decided that "for a plan to be proposed in good faith it must provide for substantial and meaningful payments to unsecured creditors." *In re Theodore Richard White*, 4 B.R. 349 (Bankruptcy Case No. 80–00125 Bkrtcy.E.D.Va. May 29, 1980). This Court has found no persuasive authority to alter that determination.

"Good faith", if it is to mean anything at all, must mean that a proposed plan does not abuse the provisions, purpose and spirit of Chapter 13. *Hobday, supra*, 4 B.R. 417, 3 Bankr.L.Rep. (CCH) at 78182. Congress provided in the Bankruptcy Code Chapter 13 relief to enable those qualifying debtors an opportunity to escape the stigma of bankruptcy by proposing a repayment plan to creditors. *See* Commission on the Bankruptcy Laws of the U.S., H.R.Doc.No.137, 93rd Cong. 1st Sess. Pts. I and II 157 (1973). The relief afforded a debtor under Chapter 13 is much broader than that under Chapter 7. It provides for the discharge of debts which might otherwise be determined to be nondischargeable under Chapter 7. *See* 11 U.S.C. § 1328(a). It does not contain the six-year bar between filings that is mandated by Chapter 7. *See* § 727(a)(8) and (9); *In re Bloom, et al.*, 3 B.R. 467, 470 (Bkrtcy. C.D.Cal.1980). Additionally, "the dishonest debtor as well as the honest debtor·can obtain a discharge in a Chapter 13 case". *Bloom, supra* at 470. A Chapter 13 plan which proposes *de minimus* payments to unsecured creditors abuses the provisions, purpose and spirit of Chapter 13 and cannot be proposed in "good faith". *Terry, supra* at 635; *Iacovoni, supra* at 266–67; *Cook, supra*, 3 B.R. 480, 3 Bankr.L.Rep. (CCH) at 77998–99; *Hobday, supra*, 4 B.R. 417, 3 Bankr.L.Rep. (CCH) at 78182; *In re Heard*, 6 B.R. 876, 6 B.C.D. 1272 (Bkrtcy.W.D.Ky. 1980). *Contra, In re Harland*, 3 B.R. 597

(Bkrtcy.D.Neb.1980); *In re Cloutier*, 3 B.R. 584 (Bkrtcy.D.Col.1980); *In re Stollenwerck*, 5 B.R. 616, 3 Bankr.L.Rep. (CCH) 78174 (Bkrtcy.M.D.Ala.1980); *In re Thorson*, 6 B.R. 678, 6 B.C.D. 1268 (Bkrtcy.D.S. D.1980). As aptly stated by Judge Flowers: "A 'good faith' plan is the price exacted by Chapter 13 for its more generous relief." *Cook, supra*, 3 B.R. 480, 3 Bankr.L.Rep. (CCH) at 77998.

A plan under Chapter 13 which proposed no payments or *de minimus* payments is no more than a Chapter 7 liquidation in disguise.

"[A] bankruptcy case does not become a Chapter 13 case merely by calling it a Chapter 13 case. If its real motive and purpose is to obtain a discharge of the debts without a reasonable and substantial payment to the creditors, . . . the court should recognize the case for what it is, an illusion . . . . [T]he illusory Chapter 13 plan is not in good faith." *In re Bloom, supra* at 472. *Accord, In re Beaver*, 2 B.R. 337, 5 B.C.D. 1285 (D.C.S.D. Cal.1980); *In re Campbell*, 3 B.R. 57, 5 B.C.D. 1365 (D.C.S.D.Cal.1980); *In re Howard*, 3 B.R. 75, 5 B.C.D. 1375, (D.C.S. D.Cal.1980).

This Court will not approve an "illusory" Chapter 13 plan.

■ Rejecting a *de minimus* Chapter 13 plan as not being in "good faith", the question then becomes: "How much does 'good faith' require?". Noting that a Chapter 13 plan must be scrutinized on a case-by-case basis, this Court reaffirms its previous holding that "good faith" requires *meaningful* and *substantial* payments to unsecured creditors. *White, supra; In re Hall*, 4 B.R. 341 (Bankruptcy Case No. 79–01575, Bkrtcy. E.D.Va. May 27, 1980). *See also Iacovoni, supra* at 266, 268; *Campbell, supra*, 3 B.R. 57, 5 B.C.D. at 1366; *In re Marlow*, 3 B.R. 305 (Bkrtcy.N.D.Ill.1980); *Bloom, supra* at 468. Those factors to be considered in determining whether the proposed payments are meaningful and substantial are the budget of the debtor, the future income and payment prospects of the debtor, the dollar

---

**4.** Rev'd and rem'd 6 B.R. 360 (U.S.D.C.N.D.Cal. 1980).

amount of debts outstanding, the nature and extent of available assets, the proposed percentage of repayment, and the nature of the debts sought to be discharged. *Iacovoni, supra* at 267; *Cook, supra,* 3 B.R. 480, 3 Bankr.L.Rep. (CCH) at 77999.

It appears, however, that "good faith" does not require "best effort" of the debtor. *Iacovoni, supra* at 267; *In re Powell,* 2 B.R. 314, 5 B.C.D. 1233, 1234 (D.C.E.D.Va.1980). *Contra Marlow, supra* at 308. Nothing first that Chapter 7, unlike Chapter 13, contains both requirements of "good faith" and "best effort" (11 U.S.C. § 727) and noting second that a proposed technical amendment to the Bankruptcy Code would have added a "best effort" requirement to § 1325(a)(3), it seems clear, whether an initial oversight or an intentionally compromised deletion, that "best effort" is not a current requirement. *See Powell, supra,* 2 B.R. 314, 5 B.C.D. at 1234; *Iacovoni, supra* at 267.

Focusing now on § 1325(a)(4), the "best interest of creditors test", a Chapter 13 plan must provide unsecured creditors not less than the amount that would be paid to such creditors if the estate of the debtor were liquidated under Chapter 7. *See* H.R. Rep.No. 595, 95th Cong., 1st Sess. 430 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. A "no asset" case would typically accomplish this purpose even in a no-payment Chapter 13 plan. However, on a grander scale, can it really be said that the allowance of no-payment plans, with its broader relief, is ever in the best interest of creditors? The Chapter XIII plan under the Bankruptcy Act, in contradistinction to the Chapter 13 plan under the Bankruptcy Code, gave unsecured creditors the significant right to vote on the plan. The "best interest" test (as well as the "good faith" requirement) is the replacement to the Chapter XIII requirement that the unsecured creditors accept the plan. *Iacovoni, supra* at 266. *See* H.R.Rep.No. 595, 95th Cong., 1st Sess. 430 (1977). This substitu-

tion cannot be lightly taken. For a Chapter 13 plan to be in the best interest of creditors, it must propose meaningful and substantial payments to unsecured creditors. If not, the debtor should be in a Chapter 7 liquidation.

Reviewing the Debtors' proposed plan in light of the foregoing, confirmation must be denied. Based on the schedules and the Debtors' testimony, they are not eligible for Chapter 13 relief under § 1325(a)(1) and § 109(e) for the Debtors' excess income over expenses is not sufficient to provide meaningful and substantial payments under the plan.[5] The plan also discriminates unfairly among unsecured creditors. The plan is in violation of § 1325(a)(3), as a *de minimus* payment plan, which does not propose meaningful and substantial repayment to unsecured creditors is not in good faith. Finally, the plan is in violation of § 1325(a)(4) in that a *de minimus* repayment plan as proposed is not in the best interest of creditors.

---

**5.** This is not to say that the Debtors could not make the $20 per month payment under the plan.