**In re NORTHEAST CORPORATION, Bankrupt.**

**Thomas J. CHANDLER, Jr., et al., Appellants,**

v.

**HIGGS & YOUNG, INC., Appellee.**

**No. 74–2183.**

United States Court of Appeals, Fourth Circuit.

Argued May 8, 1975.

Decided July 23, 1975.

---

Robert M. Musselman, Charlottesville, Va., for appellant.

Colin J. S. Thomas, Jr., Stauton, Va. (Timberlake, Smith, Thomas & Moses, Stauton, Va., on brief), for appellee.

* Second Circuit Judge, sitting by designation.

1. Section 141 of the Bankruptcy Act of 1973, 11 U.S.C. § 541, provides:.

"Upon the filing of a petition by a debtor, the judge shall enter an order approving the petition, if satisfied that it complies with the requirements of this chapter and has been filed in good faith, or dismissing it if not so satisfied."

Before HAYNSWORTH, Chief Judge, ANDERSON,* Senior Circuit Judge, and RUSSELL, Circuit Judge.

ANDERSON, Circuit Judge:

This is an appeal by Thomas J. Chandler, Jr., Dr. Charles W. Hurt, and Pliny M. Cropp, creditors of the bankrupt Northeast Corporation, from an opinion and order of the district court dismissing their reorganization petition pursuant to § 141 of the Bankruptcy Act of 1973 (the Act), 11 U.S.C. § 541,[1] on the ground that the petition had not been filed in "good faith" as that term is defined in § 146 of the Act, 11 U.S.C. § 546,[2] and remanding for further proceedings in ordinary bankruptcy. We affirm.

The relevant facts are as follows. Northeast Corporation was organized under the laws of Virginia by Dr. Hurt and Mr. Henry Miller, as its stockholders and executive officers, solely to acquire, develop, and market a tract of land in Virginia containing approximately 248 acres, generally referred to as the "Harnesberger Tract." The tract was purchased for $750,000 under a contract, dated April 4, 1970, negotiated by Mr. Cropp as sales agent or realtor, and entered into between Higgs & Young, Inc., as seller, and Dr. Hurt, or assigns, as purchaser. The contract required a deposit of $5,000 earnest money and a $107,500 downpayment at its signing, the balance to be financed by a first mortgage or deed of trust of $240,000, and a subordinate deed of trust for $397,500. A third deed of trust was later executed for $37,500, $18,750 of which secured Mr. Cropp, and $18,750 of which secured Dr. Hurt, presumably for their payments on account of the second or subordinate deed of trust, thereby leaving a balance

2. Section 146 of the Bankruptcy Act of 1973, 11 U.S.C. § 546, provides, in relevant part:

"Without limiting the generality of the meaning of the term 'good faith', a petition shall be deemed not to be filed in good faith if—   .   .   .
(3) it is unreasonable to expect that a plan of reorganization can be effected;   .   .   .."

due on the debt under that deed of trust of $360,000 due to Higgs & Young, Inc., the appellee herein, and $240,000 due under the first mortgage debt payable to members of the Harnesberger family.

Upon acquiring the tract, the bankrupt sold approximately 33 acres to Mr. Miller and Dr. Hurt in exchange for releases for the $112,000 which they had advanced to pay the required earnest money deposit and downpayment. Thereafter, on July 1, 1972, Dr. Hurt and Mr. Miller voluntarily transferred all of the capital stock of the bankrupt, together with a cash payment of $1,000 consideration, to Thomas J. Chandler, Jr., who thus succeeded to ownership and management of the corporation as its president.

Although it is alleged that the parties to the contract believed the public sewer and water were available on the property, sufficient to permit high density residential, business, and commercial development, Northeast discovered, subsequently to the closing of the transaction, that while water was available, a public sewer was not. Northeast was unable to obtain an agreement from county and city authorities to extend sewer facilities to the tract before early 1975, and the tract continued to be primarily zoned for agricultural, rather than multi-family and business use. Consequently, Northeast's development plans were seriously delayed and the corporation could not generate enough income either to pay its secured indebtedness or its taxes as they came due.

In default on its secured debt, therefore, and unable to enjoin a foreclosure sale of the tract scheduled for December 1, 1973, when it failed to post a $300,000 indemnity bond, Northeast filed a voluntary petition in bankruptcy on November 30, 1973. The foreclosure sale took place as scheduled, but it had meanwhile become subject to the approval of the bankruptcy court. Because the property brought a price of only $335,000 at that sale, and because the bankrupt's aggregate secured debt was then $567,500, the bankruptcy court treated the trustee's

petition, seeking the court's approval of the foreclosure sale, as a petition for abandonment. The abandonment hearing was held on February 6, 1974, during which the trustee formally recommended abandonment of the property as an asset of the bankruptcy estate, based on his valuation of the property at $350,000. Appellants, through counsel for Northeast, responded by filing a petition that same day requesting corporate reorganization under Chapter X of the Act.

Because of the past history of the case, the district court appointed a special master to investigate and report to the court whether or not the Chapter X petition had been filed in good faith, pursuant to § 146 of the Act, 11 U.S.C. § 546. At a hearing before the special master on May 29, 1974, the bankrupt submitted evidence that the present market value of the property was $800,000. The special master concluded, however, that the bankruptcy trustee's $350,000 appraisal for the tract was more realistic. He noted that the $800,000 valuation was contingent on the making of substantial improvements to meet zoning and development requirements; that the development of the tract into one-half acre residential lots, as assumed by the $800,000 appraisal, would also require a sewerage connection fee of $450 per lot; and that no evidence had been introduced to show that sufficient capital funds were available to the bankrupt to meet these required capital expenditures, other than from sales from the property itself. Consequently, the special master concluded that it was unreasonable to expect that a plan of reorganization could be effected; "that the Chapter X petition had been used to restrain creditors while efforts were undertaken to obtain funds;" and that the petition was not filed in good faith.

Based on the special master's report, as well as on its own appraisal of the bankrupt's financial situation and future prospects, the district court agreed that an appraisal of $350,000 was more accurate than the unlikely valuation of $800,000 asserted by the bankrupt. The court

also considered the additional facts that the total secured debts amounted to $567,500, of which $530,000 was the total balance then due to the first and second mortgagees, who adamantly opposed any further delay in the consummation of the foreclosure sale, and declared that they would not approve of any Chapter X reorganization. It, therefore, appeared virtually impossible for the appellants to obtain acceptance of such a plan by creditors holding two-thirds in amount of claims filed and allowed of each class of creditors, as required by § 179 of the Act, 11 U.S.C. § 579.[3] Accordingly, the court dismissed the petition and remanded the case to the bankruptcy court for further proceedings in ordinary bankruptcy. This appeal followed.

Appellants first argue that at the initial stage of the proceedings, before any specific plan of reorganization has been proposed, the announced opposition of certain creditors is not relevant to the issue of good faith under § 146(3), and, therefore, the district court erred in considering the opposition of all of the first and second lienors in making its determination. It is well established in this circuit, however, that while announced creditor opposition is not controlling on the issue of good faith, it is "a factor to be weighed unless it is clear that the objecting creditors would not be affected by the plan." *Janaf Shopping Center, Inc. v. Chase Manhattan Bank,* 282 F.2d 211, 214–15 (4 Cir. 1960). *See also, Wachovia Bank & Trust Co. v. Dameron,* 406 F.2d 803, 806 (4 Cir. 1969); *In Re Bermec Corporation,* 445 F.2d 367, 369 (2 Cir. 1971). It is apparent from the district court's opinion, however, that creditor opposition was only one of several factors on which the court based its conclusion that there was a lack of good faith on the part of the petitioner.

Appellants also argue that, given the facts in this case, the court erred in finding that it was unreasonable to expect that a plan of reorganization could be effected (§ 146(3)). The petitioner, however, has the burden of proving "good faith" in a Chapter X proceeding, *Marine Harbor Properties, Inc. v. Manufacturer's Trust Co.,* 317 U.S. 78, 84–85, 63 S.Ct. 93, 87 L.Ed. 64 (1942), and the court's finding as to good faith or the lack thereof is a factual determination that cannot be set aside unless it is clearly erroneous. *Seaboard Terminals Corp. v. Western Maryland Ry. Co.,* 108 F.2d 911, 916 (4 Cir. 1940). *See also, In Re Bermec Corporation, supra,* at 368–69; *York v. Florida Southern Corporation,* 310 F.2d 109, 110 (5 Cir.), *cert. denied,* 372 U.S. 943, 83 S.Ct. 936, 9 L.Ed.2d 968 (1962). In this case any plan of corporate reorganization would have to be predicated on pure speculation at best. As stated in *In Re Liberty Mortgage Corporation,* 245 F.Supp. 858, 863 (N.D.Ohio 1965), "Chapter X is not designed to afford a vehicle for visionary or impractical schemes for financial resuscitation."

The district court's findings of fact are supported by substantial evidence and justify the conclusions reached.

Appellants' other arguments are without merit.

Affirmed.

---

3. Section 179 of the Bankruptcy Act of 1973, 11 U.S.C. § 579, provides, in pertinent part:

"After a plan has been accepted in writing, filed in court, by or on behalf of creditors holding two-thirds in amount of the claims filed and allowed of each class, . . . exclusive of creditors . . . who are not affected by the plan or whose claims . . . are disqualified . . . ., or for whom payment or protection has been provided as prescribed in paragraphs (7) and (8) of section 616 of this title, the judge shall fix a hearing . . . for the consideration of the confirmation of the plan and of such objections as may be made to the confirmation."