In re Wavalene N. BARNES, Debtor.

Bankruptcy No. 79–00293.

United States Bankruptcy Court,
District of Columbia.

July 30, 1980.

George F. Bason, Washington, D.C., for debtor, Wavalene Barnes.

Cynthia A. Niklas, Washington, D.C., Trustee appearing on behalf of herself as trustee.

## MEMORANDUM OPINION

ROGER M. WHELAN, Bankruptcy Judge.

This matter came before the Court on July 9, 1980, for a hearing on confirmation of a Chapter 13 plan filed by the debtor on December 10, 1979, and amended February 20, 1980.[1] For the reasons stated herein, the Court finds that the plan fails to meet the confirmation standards of good faith, as set forth in 11 U.S.C. 1325(a)(3), and feasibility, as set forth in 11 U.S.C. 1325(a)(6). Therefore, confirmation is denied and an order for relief under Chapter 7 will be entered.

The facts of record are as follows. The debtor is employed and has a net monthly income of $749.17.[2] She has two dependent children and lists monthly expenses of $658.17, including $654.66 covering rent, utilities, clothing, food, and medical expenses [Chapter 13 Statement, Item 4(b)(1)–(14)] and miscellaneous expenses of $3.51 [Chapter 13 Statement, Item 4(b)(15)]. Debtor's original statement estimated

---

1. The Court entered an order on April 25, 1980, transferring this case to the United States Bankruptcy Court for the District of Maryland on the basis of improper venue. An appeal was taken, and the order transferring the case was stayed pending final disposition of appellate proceedings. See order filed May 8, 1980.

2. At the time the original plan was filed, the debtor listed additional income of $103.63 biweekly from a parttime job, which has since terminated.

$48.21 in miscellaneous expenses, bringing her total estimated expenses to $702.87. No explanation was offered for the reduction of the miscellaneous item in the debtor's budget. Debtor's non-miscellaneous expenses listed monthly amounts of $150.00 for food; $25.00 for clothing; and $10.00 for medical expenses, for the debtor and her two children.

The debtor has one partially secured creditor, the Treasury Federal Credit Union, with a claim in the amount of $3,500.00, which is secured by the debtor's automobile, to the extent of $1,750.00. At the confirmation hearing, debtor's counsel represented that another creditor, Marcy Avenue Homebuyers Association, is secured in the amount of $710.00. At the time of the confirmation hearing, the debtor's arrears to the Prince George's County Housing Authority had been paid. The Internal Revenue Service has filed a proof of claim in the amount of $242.96 for unpaid taxes. Debtor's unsecured indebtedness, including the unsecured balance of the Credit Union's claim, totals, $8,007.83.

The debtor proposes to pay into the plan the sum of $91.00 monthly, which is the entire amount of the excess of her income over expenses, as reflected by her amended budget. (See Amendment to Ch. 13 Statement filed February 20, 1980.) The plan proposes a 100% repayment of secured creditors to the extent of their security (totalling $2,400.00), and a 1% repayment over a 3½-year period,[3] of general unsecured creditors (totalling $77.83 in payment of approximately $8,000 in debts).

## I.  Ability to comply with the plan

The trustee objects to confirmation on the basis that the debtor will not be able to make the payments proposed under the plan. Debtor's attorney argues that the debtor's ability to comply with the plan is demonstrated by her current adherence to her proposed budget, and that her incentive to comply with the plan is strong, inasmuch as she faces the risks of eviction and of repossession of her automobile if she does not obtain relief under Chapter 13.

In view of the fact that the payments proposed under the plan would absorb the debtor's entire available income, the Court cannot find that the debtor "will be able to make all the payments under the plan and to comply with the plan" as required by § 1325(a)(6) of the Bankruptcy Code. The Court further notes that the debtor's estimated expenses do not reflect prevailing costs of food and fuel, and that these estimates are unreasonably low, particularly in view of the inflationary trend foreseeable in the next 3½ years. For these reasons, the Court finds that the plan fails to meet the so-called "feasibility" requirement for confirmation as set forth in 11 U.S.C. 1325(a)(6).

## II.  Good faith

In a previous decision, *In re Montano*, 4 B.R. 535, (D.C. 1980), this Court held: (1) a plan under Ch. 13 of the Bankruptcy Code must provide for meaningful payment to creditors in order to be proposed in good faith, as required by § 1325(a)(2); and (2) the determination of what constitutes meaningful payment is to be made on a case-by-case basis. In view of *Montano's* financial resources, a plan proposing 1% payment on unsecured indebtedness was not deemed "meaningful repayment." Although the Court's ruling in this case comports with its prior ruling in *Montano*, because of the importance of this issue under the new Bankruptcy Code, and because of the additional circumstances presented in the instant case, the Court will again set forth the reasons for its holding.

The plan in this case, as the plan in *Montano*, is a plan of composition, and proposes to pay 1% prorata to general unsecured creditors over a 3½ year period. However, the facts in this case differ from those presented in *Montano* in the following respects: (1) the debtor's income and expenses render her unable to propose monthly payments beyond those proposed in the plan now before the Court; (2) the personal

---

**3.**  A motion to extend the plan to 3½ years was filed on June 9, 1980.

circumstances of the debtor indicate that her reasons for seeking relief under Chapter 13 are compelling: she has two children entirely dependent upon her, and they face possible eviction and automobile repossession if her case is dismissed or converted to liquidation proceedings. These circumstances give the Court pause, and make the determination of whether the plan is proposed in good faith, a difficult one. These facts raise the question of whether compelling personal circumstances can justify the proposal of a minimal repayment plan, or stated differently, whether payment of 1% on unsecured indebtedness can ever be deemed "meaningful." In addressing these questions, the Court again notes that neither the Code nor the legislative history expressly directs that a plan, in order to meet the test of "good faith," must propose payments to unsecured creditors which are more than de minimus.

■ The argument has been advanced that the percentage of payment proposed in a plan is irrelevant to the requirement of good faith because the minimum amount of payment which the legislature sought to prescribe is that set forth in 11 U.S.C. 1325(a)(4), the so-called "best interest of creditors" or "liquidation" test. This argument simply ignores the legislative history surrounding Ch. 13 and fails to view the statute as a whole. This "liquidation test" was originally developed "to safeguard minority creditor interests" and was not intended as the only guideline for the restraint of marginal composition plans. 5 Collier on Bankruptcy, ¶ 1325.01[D][a] at 1325–9; ¶ 1325.01[D][c] at 1325–12 (15th Ed. 1979). "Under Ch. 13, the debtor may retain his property by agreeing to repay his creditors." H.R. Rep. 595, 95th Cong., 1st Sess., 118 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5787, 6079. In view of this language, it is clear that Congress did not intend to permit plans providing for no repayment, or for de minimus repayment.[4]

Clearly, composition plans were envisioned under the new Ch. 13. However, Congress did not intend, in permitting composition plans, to permit no repayment; a plan which provides 1% payment is essentially *no* repayment. "The purpose of Ch. 13 is to enable an individual, under court supervision and protection, to develop and perform under a plan for the repayment of his debts over an extended period of time." H.R. Rep. 595, 95th Con., 1st Sess., 118 (1977), U.S. Code Cong. & Admin. News 1978, 6079. Bkr. L. Ed., Legislative History § 82:4(19) (emphasis added). One Court has observed that if the confirmation of minimal repayment plans had been intended, other statutory provisions in Ch. 13, such as the requirement that Ch. 13 debtors have regular income, would become useless. *In re Bloom*, 3 B.R. 467, 6 B.C.D. 141 (C.D. Calif. 1980).

When Ch. 13 is used to pay unsecured creditors 1% of their debts, which is tantamount to nothing at all, then Ch. 13 becomes a statutory tool for dealing solely with secured creditors, partially secured creditors, and priority creditors, and for the avoidance of most nondischargeable debts. See: *In re Marlow*, 3 B.R. 305, 6 B.C.D. 77 (N.D. Ill. 1980). Although a literal interpretation of Ch. 13 would, arguably, allow the confirmation of the 1% plan, this interpretation is at odds with the stated legislative goals of Ch. 13; furthermore, this interpretation would result in the expenditure of judicial and administrative resources in an inefficient and illogical way. In this regard, the Court notes that in the instant case, the trustee's commission for administration of the plan is over three times the total payment to unsecured creditors. The legislature could not have intended the time and resources of the United States Trustee's Office to be expended to administer plans which result in no benefit to creditors. *See: In re Schongalla*, 4 B.R. 360, 6 B.C.D. 408 (Md. 1980).

---

4. One commentator has observed that an implicit goal of Ch. 13 is to encourage a debtor to pay his bills, and that the development of fiscal responsibility on the part of the debtor, is, in fact, the benefit to the debtor inherent in Ch.

13. 5 Bkr. L. Ed., Code Commentary and Analysis § 45:4 (1979), citing Bobier, *Proposed Revision of Bankruptcy Act: A Critique*, 28 Pers. Fin. L. Q. 19, Winter 1973.

■ For these reasons, "good faith" has been construed, not merely as "honesty in fact" as defined in the Uniform Commercial Code context, or as "honesty of intention," as defined classically, but as fairness to creditors in the sense of meaningful repayment. *See, e. g., In re Howard,* 3 B.R. 75, 5 B.C.D. 1375 (S.D. Calif. 1980). *In re Campbell,* 3 B.R. 57, 5 B.C.D. 1365 (S.D. Calif. 1980). *In re Beaver,* 2 B.R. 337, 5 B.C.D. 1285 (S.D. Calif. 1980). *In re Henry,* 4 B.R. 220, 3 Bankr. L. Rep. (CCH) ¶ 67,488 (M.D. Tenn. 1980). *In re Schongalla, supra. In re Hurd,* 4 B.R. 551, 6 B.C.D. 412 (W.D. Mich. 1980). *In re Johnson,* 4 B.R. 551, 6 B.C.D. 277 (S.D. Ohio 1980).

■ Therefore, the Court finds that the plan in the instant case is not proposed in good faith, and denies confirmation. Accordingly, this case is converted to Ch. 7 of Title 11 of the United States Code.