**In the Matter of Douglas WOJICK and Sandra B. Wojick, Debtors.**

**Bankruptcy No. 2–80–00474.**

United States Bankruptcy Court, D. Connecticut.

March 20, 1981.

---

Christopher C. Noble, Hartford, Conn., for debtors.

Joseph Neiman, Newington, Conn., trustee.

David S. Gordon, of Roberto & Farr, East Hartford, Conn., for Russell G. Nelson, creditor.

Leonard M. Horvath, of Golas & Horvath, P. C., Manchester, Conn., for Northeast School Employees Federal Credit Union, creditor.

### MEMORANDUM AND ORDER

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

Douglas Wojick and Sandra B. Wojick filed their joint petition for relief pursuant

Rule 805 upon the posting of a bond. Because Kennedy failed to post such bond, the sale and distribution were consummated.

to 11 U.S.C. Chapter 13 on May 13, 1980. At this stage of the case, the Wojicks are seeking confirmation of their fourth modified plan. Two creditors, Russell G. Nelson (Nelson) and Northeast School Employees Federal Credit Union (Credit Union), have filed objections to confirmation.

The Wojicks, wife and husband, claim in their schedules total assets of $63,900.00—$61,000.00 of which was attributed to their jointly-owned residence located at 336 Merline Road, Vernon, Connecticut (residence). They claim a joint homestead exemption of $15,000.00 to be applied to their residence. Douglas listed his occupation as that of construction worker and reported a gross income of $10,595.00 during 1979. Sandra listed herself as a teacher and reported a gross income of $16,138.79 in the same year.

The original Chapter 13 plan proposed payment to the trustee of approximately $400.00 per month, omitting the months of July and August, for three years, the fund so established to be apportioned among lienors and unsecured creditors. July and August were to be no-payment months because Sandra is paid on a ten-month schedule, and the family income is allegedly reduced in the summer. Nelson, as a creditor for $10,000.00, $8,000.00 of which is secured by a judgment lien, filed an objection to the plan. At this juncture, the attorney who filed the Wojicks' petition and original plan withdrew and was replaced on July 11, 1980 by their present attorney. On that day, the original plan was withdrawn. A modified plan was filed on July 22, 1980, calling for a 40% payment to all unsecured creditors from a fund established by deductions from Sandra's wages in the amount of $270.00 bi-weekly, September through June. This plan was then replaced by a second modified plan on July 31, 1980, calling for a 36% payment to all unsecured creditors. Continuing objections to the second modified plan led to a third modified plan, filed October 6, 1980, calling for varying monthly payments of $300.00 to $450.00 through June, 1983. The third modified plan was to be funded by payments from both debtors, but payment of joint unsecured claims was not to exceed an amount equal to the net equity above encumbrances and exemptions in the residence. Nelson and the Credit Union objected to confirmation of the third modified plan, and, in addition, Nelson sought dismissal of the case. A hearing on these objections and the motion to dismiss was held on October 31, 1980. On the same day, the Credit Union filed a document entitled "Objection to Discharge" which alleged that the debtors had forged the signature of a co-signer on a promissory note held by the Credit Union. At the conclusion of the hearing, the Wojicks agreed to file a brief by November 17, 1980, setting forth their reasons why the plan should be confirmed. The objecting creditors filed a motion to dismiss on December 16, 1980 for failure of the Wojicks to file the promised brief. On January 22, 1981, the Wojicks filed their fourth modified plan, the subject of the present proceeding. This fourth modified plan provides that joint unsecured creditors shall not be paid more than their equity in the residence (value of residence less value of encumbrances and homestead exemption) determined as of May 13, 1980, the date of the original filing of the petition. No payment is to be made to unsecured creditors to whom Douglas is solely liable. Such payments to joint unsecured creditors may be made at any time up to 48 months after confirmation, and will carry 8% interest from May 13, 1980 to date of payment. While the plan is in effect, the debtors will pay increasing monthly amounts, varying from $300.00 to $450.00, to the trustee who will use these monies to pay the liens on the residence in the order of their priority. Omitted from such liens were the first mortgage and a sewer lien, which were to be paid directly by the debtors. There are no claims entitled to priority under 11 U.S.C. § 507. If nothing has been paid to unsecured creditors by the end of 48 months, the court is to order the residence sold to fund the payments then due the unsecured creditors.

A hearing on confirmation of the fourth modified plan, objections thereto, and the motion to dismiss the case was held on February 6, 1981, at which time the parties

agreed that the testimony received at the October 31, 1980 hearing might be made part of this proceeding. The evidence discloses that Sandra is a public-school teacher, paid bi-weekly during ten months of the year. She earns an additional $60.00 to $75.00 per week by tutoring. During 1980, she earned $16,800.00. In her opinion, the value of the residence is "in the low 60's". Douglas testified that he earns $10.00 per hour as a carpenter, and in 1980, his income totaled $9,000.00. He holds a civil engineering degree. Douglas was questioned by the Credit Union with respect to a promissory note signed at the time of obtaining a loan from it. Asked if he had signed the name Violet E. Wojick as co-maker of this note, Douglas claimed the protection of the 5th Amendment and refused to answer on grounds of possible self-incrimination. The objecting creditors offered the testimony of two appraisers as to the value of the residence. The appraiser employed by Nelson claimed that the residence was worth $67,800.00. The Credit Union's appraiser, whose experience was extensive, testified to a fair market value of $71,000.00.

In their brief, the Wojicks set forth the encumbrances and claimed exemptions on the residence, based on one-half ownership interest each in Douglas and Sandra, *in haec verba*:

| Type of Interest | Amount (*Estimated) | DEBTOR AFFECTED | |
| --- | --- | --- | --- |
| | | Sandra Wojick | Douglas Wojick |
| First Mort. | $27,636.17 | $13,818.08 | $13,818.08 |
| Second Mort. | $ 4,000.00* | $ 2,000.00 | $ 2,000.00 |
| Judg. Lien Gaber | $ 457.39* | $ 228.70 | $ 228.70 |
| Judg. Lien Craftsman's FCU | $ 2,200.00 | – – – | $ 2,200.00 |
| Third Mort. | $ 821.00 | $ 410.50 | $ 410.50 |
| Sewer Lien | $ 3,872.40 | $ 1,936.20 | $ 1,936.20 |
| Judg. Lien Beneficial | $ 1,409.38 | $ 704.69 | $ 704.69 |
| Exemptions | $15,000.00 | $ 7,500.00 | $ 7,500.00 |
| Judg. Lien Nelson | $ 8,000.00* | – – – | $ 8,000.00 |
| TOTAL | $63,396.34* | $26,598.17 | $36,798.17 |

These figures are accepted by the Credit Union and not disputed by Nelson. The Wojicks aver that the second mortgage encumbering the residence is in dispute between them and the mortgagee. They do not explain further the judicial liens labeled as "estimated". The court finds that $71,000.00 is the fair market value of the residence, given a reasonable period to find a willing buyer. I will reduce this valuation by $6,000.00 to reflect a potential loss resulting from an auction sale by a trustee under Chapter 7. The court concludes that $65,000.00 represents market value of the residence if it were liquidated in a Chapter 7 case. *See* 5 *Collier on Bankruptcy* (15th ed.) ¶ 1325.01[D][6][IV] at p. 1325–11. The Wojicks' joint schedules disclose $12,303.28 of unsecured debts. The total amount of the encumbrances upon Douglas' half-interest in the residence (applying one-half of the joint encumbrances to each debtor's interest) plus his $7,500.00 exemption ($36,798.17), exceeds Douglas' half-interest in the value of the residence ($32,500.00) by $4,298.17. Nelson, as the junior lienor secured by Douglas' share of the residence only, is unsecured thereby in the amount of $4,298.17. He is owed an additional $2,000.00 on an unsecured basis, which ren-

ders his total unsecured debt $6,298.17. The value of Sandra's one-half interest of $32,500.00 exceeds the amount of the liens (applying one-half of joint encumbrances) encumbering that interest, plus her $7,500.00 exemption, by $5,901.83, and this figure constitutes the unsecured creditors' net equity to which payment of unsecured debt is limited by the plan. The Wojicks' amended budget, filed on October 31, 1980 to demonstrate an ability to fund the plan, does not include any income from Douglas. The Wojicks assert that this omission was necessary because Douglas was not working at the time the budget was submitted. As previously stated, Douglas testified that he earned $9,000.00 in 1980, and his Statement of Affairs disclosed an income of $10,595.00 in 1979. The Wojicks acknowledge that the plan provides for different treatment of unsecured claimants. The Wojicks aver that because Douglas' unsecured creditors would receive nothing under a Chapter 7 liquidation, they are not provided for under the plan. The Wojicks' claim that the Credit Union's allegation that they obtained a loan by fraud was not proven at trial, and that "[i]n any event, an objection to discharge is not a question for confirmation purposes". (Wojick Brief, p. 8)

Both objecting creditors deny that the plan complies with the requirements of Chapter 13. Between them, they claim, *inter alia,* that the Wojicks have failed to provide "cause" for the court to approve a plan providing payments over a period longer than three years; that the plan has not been filed in good faith; that the plan will not provide unsecured claimants with an amount not less than a Chapter 7 liquidation; and that the implied classification of unsecured claims made by the debtors is discriminatory.

Assuming, arguendo, without so deciding, that the plan otherwise complies with the provisions of Chapter 13 as required for confirmation by § 1325(a)(1), (2), (5) and (6), I cannot confirm the plan on the record before me because it fails to meet the requirements of § 1325(a)(3).[1] Although the Wojicks have averred that the purpose of this plan is to permit them to protect their interest in the residence, confirmation of the plan would have the effect of opening the way for Douglas to receive a discharge under the favorable terms of 11 U.S.C. § 1328(a)(2) whereby debts, even if based on fraud, embezzlement or larceny, are discharged upon consummation of the plan. Despite the Wojicks' assertion that the issue of alleged fraud is not a proper consideration in confirmation proceedings, this court has ruled to the contrary. One of the findings I must make to confirm any plan is that "the plan has been proposed in good faith". This court has had prior occasion to consider the propriety of taking into account, when determining the issue of good faith, whether a major motive of the debtor in filing a Chapter 13 petition was to avail himself of that Chapter's advantageous discharge provisions. *In the Matter of Murallo,* 4 B.R. 666, 6 B.C.D. 478 (Bkrtcy. D.Conn.1980). I concluded in *Murallo* that it was proper to take such a motive into

---

1. § 1325. *Confirmation of Plan.*
    (a) The court shall confirm a plan if—
        (1) the plan complies with the provisions of this chapter and with other applicable provisions of this title;
        (2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;
        (3) the plan has been proposed in good faith and not by any means forbidden by law;
        (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

    (5) with respect to each allowed secured claim provided for by the plan—
        (A) the holder of such claim has accepted the plan;
        (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
        (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
        (C) the debtor surrenders the property securing such claim to such holder; and
    (6) the debtor will be able to make all payments under the plan and to comply with the plan.

account, especially where the debtor proposed merely nominal payments or no payments at all.[2] Here, the Credit Union, owed a debt comprising $8,150.00 of the total unsecured indebtedness of $12,800.00, has filed an objection to discharge alleging "fraudulent acts of the debtors". At trial, Douglas refused to answer questions put to him regarding an alleged forgery on grounds of self-incrimination. The Credit Union has thus made a prima facie case that such an issue exists.

In addition to consideration of a motive to discharge a debt not dischargeable under a Chapter 7 case, an element of good faith requires that Chapter 13 not be used as a mere substitute for liquidation. The plan before me limits payment to precisely $5,901.83 on joint unsecured indebtedness of $12,303.28. The Wojicks claim that such an

amount is all that would be available to unsecured creditors in the event of liquidation and that therefore the plan need not provide more.[3] Thus, this plan intends that the best-interest-of-creditors test of § 1325(a)(4), rather than establishing a floor beneath which payment to unsecured creditors cannot be permitted to sink, become a ceiling above which payment will not be permitted to rise.[4] This plan, moreover, offers no payment whatever to the unsecured creditor for whose debt Douglas is solely liable. At the same time, Douglas makes no commitment to pay anything to fund the plan. In view of Douglas' personal financial resources, as disclosed by his recent employment history, his intent to pay nothing to his unsecured creditor further evidences lack of good faith. Such a

---

2. Since this court's decision in *Murallo*, numerous reported cases have discussed the issue of good faith in Chapter 13 confirmation proceedings. Of the cases denying confirmation, the majority take into consideration the advantageous discharge provisions of Chapter 13 when determining good faith or lack thereof. See: *In re Terry*, 630 F.2d 634, 6 B.C.D. 974 (8th Cir. 1980); *In re Anderson*, 3 B.R. 160, 6 B.C.D. 73 (Bkrtcy.S.D.Cal.1980); *Matter of Cook*, 3 B.R. 480 (Bkrtcy.S.D.W.Va.1980); *In re Tanke*, 4 B.R. 339, 6 B.C.D. 406 (Bkrtcy.D.Colo.1980); *In re Schongalla*, 4 B.R. 360, 6 B.C.D. 408 (Bkrtcy. D.Md.1980); *In re Montano*, 4 B.R. 535, 6 B.C.D. 487 (Bkrtcy.D.C.1980); *In re Hurd*, 4 B.R. 551, 6 B.C.D. 412 (Bkrtcy.W.D.Mich.1980); *In re Barnes*, 5 B.R. 376, 6 B.C.D. 1241 (Bkrtcy. D.C.1980); *In re DeSimone*, 6 B.R. 89, 6 B.C.D. 861 (Bkrtcy.S.D.N.Y.1980); *Matter of Hurd*, 6 B.R. 329, 6 B.C.D. 1097 (Bkrtcy.N.D.Ind.1980); *In re Heard*, 6 B.R. 876, 6 B.C.D. 1272 (Bkrtcy. W.D.Ky.1980); *In re Satterwhite*, 7 B.R. 39 (Bkrtcy.N.D.Tex.1980); *In re Leal*, 7 B.R. 245 (Bkrtcy.D.Colo.1980); *In re Carter*, 4 B.R. 612, 6 B.C.E. 538 (Bkrtcy.D.Colo.1980); *Matter of Wiggles*, 7 B.R. 373, 6 B.C.D. 1326 (Bkrtcy.N.D. Ga.1980). Cases which adopt a rule to the contrary that bankruptcy courts ought not to find lack of good faith where a debtor files a nominal Chapter 13 plan to obtain a "super" discharge are: *In re Cloutier*, 3 B.R. 584, 6 B.C.D. 196 (Bkrtcy.D.Colo.1980); *In re Jenkins*, 4 B.R. 278, 6 B.C.D. 378 (Bkrtcy.D.Colo.1980); *In re McBride*, 4 B.R. 389 (Bkrtcy.M.D.Ala. 1980); *In re Koerperich*, 5 B.R. 752, 6 B.C.D. 970 (Bkrtcy.N.D.Neb.1980); *In re Seely*, 6 B.R. 309, 6 B.C.D. 1003 (Bkrtcy.E.D.Va.1980); *In re Thorson*, 6 B.R. 678, 6 B.C.D. 1268 (Bkrtcy.D.S. D.1980); *In re Walsey*, 7 B.R. 779, 6 B.C.D. 1410 (Bkrtcy.N.D.Ga.1980); *In re Fluharty*, 7

B.R. 677, 6 B.C.D. 1417 (Bkrtcy.N.D.Ohio 1980).

3. The court will assume that the same values would apply on the effective date of the plan as on the date the petition was filed.

4. The plan also states that the debtors shall have up to 48 months to make such payment, and proposes 8% interest to date of payment to represent the present value of the unsecured creditors' interests. In view of the circumstances leading to the court's ultimate conclusion herein, it is not necessary for me to discuss further the serious question of what would constitute a proper discount rate to insure that unsecured creditors would receive the equivalent by delayed payment under a Chapter 13 plan of present value obtainable under a Chapter 7 liquidation. Suffice it to say that those cases which have dealt with the analogous issue of the interest required to provide present value to *secured* creditors or unsecured creditors of *solvent* debtors have employed differing rationales to arrive at different rates to be employed. Discount rates adopted by bankruptcy courts have been equivalent to the rate called for by the contract of the financing lender, *In re Smith*, 4 B.R. 12, 6 B.C.D. 424 (Bkrtcy.E.D.N.Y. 1980); *In re Anderson*, 6 B.R. 601 (Bkrtcy.S.D. Ohio 1980), the statutory rate provided for by the Internal Revenue Code (26 U.S.C. § 6621); *In re Ziegler*, 6 B.R. 3, 6 B.C.D. 194 (Bkrtcy.S. D.Ohio 1980), or the legal rate pertaining to judgments provided for by state statute; *In re Lum*, 1 B.R. 186 (Bkrtcy.E.D.Tenn.1980); *Matter of Crockett*, 3 B.R. 365 (Bkrtcy.N.D.Ill. 1980); *In re Williams*, 3 B.R. 728, 6 B.C.D. 237 (Bkrtcy.N.D.Ill.1980).

plan as that proposed by the Wojicks, taking into account all the circumstances of this case, diminishes the purposes of Chapter 13. *Matter of Cook, supra,* at 485–486.

The court concludes that the Wojicks' fourth modified plan does not qualify for confirmation. Confirmation is hereby denied, and the Chapter 13 case is dismissed.

It is

SO ORDERED.

This memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Rule 752 of the Rules of Bankruptcy Procedure.